CALLOWHILL NEIGHBORHOOD AS-
SOCIATION, Michelle Liao, Leslie
Stahl, John Struble, Peter Kendzier-
ski, Gwynne Keathly, George Brooks,
Chinese Christian Church, Chinatown
Development Corporation and Scenic
Philadelphia

v.

CITY OF PHILADELPHIA ZONING
BOARD OF ADJUSTMENT and
City of Philadelphia.

Callowhill Neighborhood Association,
John Struble, Michelle Liao, Leslie
Stahl, and Peter Kendzierski

v.

City of Philadelphia Zoning Board
of Adjustment and City of
Philadelphia

Appeal of: Callowhill Neighborhood As-
sociation, Michelle Liao, Leslie Stahl,
John Struble, Peter Kendzierski,
Gwynne Keathly, George Brooks, Chi-
nese Christian Church and Chinatown
Development Corporation.

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2015.

Decided June 17, 2015.

David S. Fineman and Lee Applebaum, Philadelphia, for appellants.

Andrew S. Ross, Chief Deputy City Solicitor, Philadelphia, for appellee City of Philadelphia.

Leslie M. Gerstein, Philadelphia, and Robert L. Byer, Pittsburgh, for appellee H.A. Steen Industries, Inc.

BEFORE: DAN PELLEGRINI, President Judge, RENÉE COHN JUBELIRER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge, PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge RENÉE COHN JUBELIRER.

Callowhill Neighborhood Association (Callowhill), Michelle Liao, Leslie Stahl, John Struble, Peter Kendzierski, Gwynne Keathly, George Brooks, Chinese Christian Church and Chinatown Development Corporation (collectively "Objectors") appeal from the Order of the Court of Common Pleas of Philadelphia County (trial court) upholding the Decision of the Zoning Board of Adjustment (ZBA) of the City of Philadelphia (City).[1] The Philadelphia Department of Licenses and Inspections (L. & I) had issued a Permit to Anter Associates, LP, on behalf of H.A. Steen Industries, Inc. d/b/a Steen Outdoor Advertising[2] (collectively "Steen"), for a sign face and format change, from static to digital, on an existing free-standing non-accessory outdoor advertising sign. Objectors appealed the issuance of the Permit and, after multiple hearings, the ZBA denied their appeal. Because the sign at issue here is lawfully permitted and L & I properly issued the Permit in accordance with the provisions of the Philadelphia Zoning and Planning Code[3] (Zoning Code), we affirm.

---

1. Although the organization Scenic Philadelphia is included in the caption and indicated that it joined Objectors' brief, Scenic Philadelphia is not named as an appellant in the Notice of Appeal.

2. Steen owns the outdoor advertising sign at issue in this matter.

3. The Zoning Code in effect at the time the Permit was issued was repealed and replaced, effective August 22, 2012. All references to

## I. BACKGROUND

The sign at issue here is a two-sided illuminated outdoor advertising sign located in the City at 1113 Vine Street (Property) in the G–2 Industrial District. (ZBA Decision at 1; Findings of Fact (FOF) ¶ 12.) All the properties within the vicinity of the sign are zoned G–2. (FOF ¶ 12.) A permit legalizing the sign as a non-accessory use was first issued in 1985. (FOF ¶ 13.) On December 17, 2007, the trial court entered a Consent Order between the City and Steen that resolved a dispute regarding the lawfulness of eight of Steen's outdoor advertising signs, including the sign at issue here. (2007 Consent Order, R.R. at 298a–300a.) In the 2007 Consent Order, the City and Steen agreed that the eight outdoor advertising signs complied with the Off–Premise Outdoor Advertising Sign provisions of the Zoning Code then in effect and that the signs were lawful in all respects. (2007 Consent Order at 3, R.R. at 300a.) In accordance with the 2007 Consent Order, the City Solicitor notified L & I by memo, dated December 17, 2007, that the eight signs in dispute, including the sign at issue here, were legally permitted. (December 17, 2007 Memorandum, R.R. at 297a.)

### A. Proceedings before ZBA

On March 30, 2012, Steen applied for and L & I issued, as of right, a Permit allowing Steen to convert the sign face to a digital format. (FOF ¶ 1.) On April 25, 2012, Objectors filed a petition for appeal challenging the issuance of the Permit for a number of reasons: (1) the change to digital format did not comply with the Outdoor Advertising and Non–Accessory Advertising Controls (Outdoor Advertising Controls) of the Zoning Code;[4] (2) the format change was prohibited by the Special Sign Controls for Area Surrounding the Vine Street Parkway and Benjamin Franklin Bridge Approach[5] (Special Sign

the Zoning Code set forth in this opinion are to the version in effect in March 2012.

4. Section 14–1604 of the Zoning Code governed "Outdoor Advertising and Non–Accessory Advertising Controls." (Section 14–1604, R.R. at 1131a–34a.) The primary purpose of this Section of the Zoning Code was to impose special sign controls to provide "for the removal of unsightly, distracting [commercial] signs" within or in close proximity to residential neighborhoods, schools and neighborhood recreation facilities, and to set forth "the requirements for acceptable signage ... to promote traffic safety, protect views, minimize sign pollution and protect the historic, cultural, aesthetic, and economic vitality of the City of Philadelphia." (Section 14–1604(1)(m), R.R. at 1131a.)

5. Section 14–1604.1 of the Zoning Code governed "Special Sign Controls for Area Surrounding the Vine Street Parkway and Benjamin Franklin Bridge Approach." (Section 14–1604.1, R.R. at 1135a–38a.) The purpose of this Section of the Zoning Code was to impose special sign controls to provide for the removal of unsightly, distracting commercial signs and to set forth the requirements for

acceptable signage to promote, *inter alia*, traffic safety and protect the historic, cultural and aesthetic vitality of the designated area. (Section 14–1604.1(m), R.R. at 1136a.) Section 14–1604.1(6) mandates that any existing sign that did not conform to Section 14–1604.1 be removed within five years, except for signs subject to the Federal Highway Beautification Act, 23 U.S.C. §§ 101–170, or Pennsylvania's Outdoor Advertising Control Act, Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§ 2718.101–2718.115. (Section 14–1604.1(6)(a), R.R. at 1137a.) Pursuant to Section 14–1604.1(6)(b), L & I was not prohibited from removing a sign at any time that had been determined to be a public nuisance or unlawfully in existence under any other provision of the Zoning Code. (Section 14–1604.1(6)(b), R.R. at 1137a.) Within the grace period, a prohibited sign was required to be maintained in good condition, but it could not be structurally altered so as to enlarge or extend the area or height of the sign. (Section 14–1604.1(7), R.R. at 1137a.) Section 14–1604.1(8) prohibited the issuance of a permit for any sign which was subject to these provisions. (Section 14–1604.1(8), R.R. at 1137a–38a.)

▪

Controls) of the Zoning Code because the sign is located on Vine Street; (3) the change would have an adverse impact on surrounding properties resulting in a public nuisance; and (4) the sign, in its current location, is not in compliance with the Federal Highway Beautification Act of 1965 [6] (Federal Beautification Act) "due to its proximity to other signs, and residences." (Appeal Letter, R.R. at 358a.) Two public hearings were held before the ZBA. (FOF ¶ 3.) The ZBA framed the issues before it as follows: (1) whether L & I followed proper procedures in reviewing the Permit application; and (2) whether L & I properly issued the Permit. (FOF ¶ 4.)

In support of their challenge, Objectors submitted documentary evidence, including photographs, and presented the testimony of L & I's plan examiner, Cheli Dahal, and Helen Diemer, a lighting expert.[7] Objectors also testified on their own behalf in opposition to the granting of the Permit.

Dahal testified that she reviewed the Permit application and issued the Permit,

as of right, based on: (1) the application; (2) the 1985 permit legalizing the sign; (3) the December 17, 2007 Memorandum; (4) the 2007 Consent Order; (5) her independent review of the applicable provisions of the Zoning Code; (6) the fact that the change would not increase the size of the sign in terms of area and height;[8] (7) the change would not violate Section 14–1604(7) of the Outdoor Advertising Controls governing "Sign Face Regulations" or Section 14–1604(8) of the Outdoor Advertising Controls governing "Illuminated, Animated, Flashing, and Revolving Sign Regulations";[9] and (8) a May 10, 2007 L & I Memorandum. (FOF ¶¶ 13–14.) The May 10, 2007 L & I Memorandum was issued by L & I to the zoning administrator and was based on the advice of the City's Law Department. (FOF ¶ 14; May 10, 2007 L & I Memorandum, R.R. at 101a–02a.) Therein, L & I interpreted Sections 14–1604(7) and (8) of the Zoning Code and concluded, in relevant part, that "[a] change in format or medium from a standard outdoor advertising sign to an electronically changing message shall be

6. 23 U.S.C. §§ 101–170.

7. Objectors also presented Alfred Borden as a lighting expert; however, the ZBA determined that he did not qualify as an expert. (FOF ¶ 19.) This determination is not at issue in this appeal.

8. The Zoning Code defined "Sign Area" as follows:

The part of a sign which is measured for purposes of conformance to the various sign dimension provisions as set forth in this Title. The area of a sign shall include any lettering, copy and/or illustrations and any background created so as to distinguish the sign and/or the message contained therein from the building or structure upon which the sign is located, provided that, the sign area of a free-standing sign shall include all elements of the sign structure, except any supporting columns, uprights or braces.

(Section 14–102, R.R. at 1127a.)

9. Sections 14–1604(7) and (8) provided as follows:

(7) *Sign Face Regulations.* No more than two (2) sign faces or advertising messages shall be permitted on any one (1) lot; provided, that no more than one (1) sign support structure shall be permitted on any lot.
(8) *Illuminated, Animated, Flashing, and Revolving Sign Regulations.*
(a) Signs may be illuminated; provided, that the illumination shall be focused upon the sign itself, so as to prevent glare upon the surrounding areas.
(b) Flashing signs, signs with intermittent illumination, or signs with mechanically, or electronically changing messages shall neither be erected within five hundred feet of any residential district, nor face any residential district within one thousand feet of the sign.
(c) Signs which revolve shall require a certificate from the Zoning Board of Adjustment.

(Sections 14–1604(7) and (8), R.R. at 1132a.)

treated as a face/format change" because only one electronically changing message is displayed at a time and, "[i]f the distance requirements as stated in the relevant code sections are met, the permit should be issued as a matter o[f] right." (May 10, 2007 L & I Memorandum at 2, R.R. at 102a.) Dahal testified that she consulted with her supervisor and concluded that, because the sign at issue was legal, it was not subject to the Zoning Code provisions that require "illegal" signs to be removed. (FOF ¶ 15.) Dahal testified further that the zoning administrator does not receive or need to receive technical plans regarding the construction required to convert a sign because the office within L & I that issues building permits will decide the impact of the conversion on the sign's structure. (FOF ¶ 15.) Dahal testified that she does not go beyond the application to determine whether a permit should be issued. (FOF ¶ 15.)

Objectors' testimony focused mainly on the adverse impact a digital sign would have on the surrounding properties and how the conversion would be a public nuisance. (FOF ¶¶ 16–18, 20–22.) Diemer testified that, in order to convert the existing sign face to digital, the sign face would need to be larger and heavier and the sign would need to be thicker. (FOF ¶ 23.)

The ZBA accepted Dahal's testimony as credible and persuasive that not only did L & I have a process in place to review the Permit application, but the application complied with those requirements. (ZBA Decision, Conclusions of Law (COL) ¶ 5.) The ZBA found that it was appropriate for Dahal to rely on the December 17, 2007 Memorandum, the 2007 Consent Order, and the May 10, 2007 L & I Memorandum. (COL ¶ 5.) The ZBA rejected Objectors legal argument that, because the conversion would result in a public nuisance, the sign *must be removed* pursuant to the Special Sign Controls set forth in the Zon-

ing Code. As noted by the ZBA, pursuant to Section 14–1604.1(6)(b) of the Zoning Code's Special Sign Controls, L & I was not *prohibited from removing* a sign that had been determined to be a public nuisance or unlawfully in existence under any other provision of the Zoning Code. (Section 14–1604.1(6)(b), R.R. at 1137a.) However, the ZBA determined that the issue before it was whether the sign face could be converted to digital, not whether the entire sign should be removed; therefore, this provision did not apply in this case. Moreover, the Special Sign Controls did not *require* L & I to consider whether a sign is a public nuisance, but just simply provided that L & I was not prohibited from removing a sign if it is determined that it is a public nuisance or unlawfully in existence. (COL ¶ 6.) Finally, the ZBA pointed out that the sign at issue is legal and, therefore, not "unlawfully in existence." (COL ¶ 6.)

The ZBA further accepted Dahal's testimony as credible, with respect to "sign area," and found that there was no evidence in the record to support Objectors' argument that the depth of the sign would change. (COL ¶ 7.) Accordingly, the ZBA determined that Objectors failed to present sufficient evidence of irregularity by L & I; therefore, they did not meet their burden of proof. (COL ¶ 8.) The ZBA determined that L & I performed its duties properly and took the steps necessary to issue a valid Permit. (COL ¶ 9.) As such, the ZBA concluded that Objectors' claim of error was unfounded. (COL ¶ 9.)

**B. Objectors' Appeal to Trial Court**

Objectors appealed to the trial court. The City filed a brief in opposition to Objectors' appeal wherein the City only addressed the merits of Objectors' appeal. Steen intervened and filed a brief addressing both the merits and whether Objectors

had standing to challenge the issuance of the Permit; however, the trial court did not address the standing issue. The trial court concluded that there was no abuse of discretion by the ZBA in granting the Permit for the sign conversion. The trial court stated:

> Upon examination of the record, the evidence reflects that the property at issue was zoned G–2 Industrial and all surrounding properties are zoned G–2. Raising the height or changing the area of the signs are the only alterations prohibited; the Code does not prohibit *all* structural changes. Although a sign with a digitally changing face may not be permitted within 500 feet of a residential **district**, the **district** in the instant case is not zoned residential, but rather G–2 industrial, and was so zoned upon the construction of the sign. The sign change was authorized by an over-the-counter permit issued by L & I as required by the Zoning Code. No code violations were committed.

(Trial Ct. Op. at 9 (bold emphasis added) (citations omitted).) Accordingly, the trial court denied Objectors' appeal of the ZBA's Decision. This appeal by Objectors followed.[10]

## II. DISCUSSION

### A. Standing

Preliminarily, we address the City's and Steen's contention that Objectors lacked standing to challenge the issuance of the Permit. The City and Steen argue that Objectors were not aggrieved because they did not show a substantial, direct, and immediate interest in the issuance of the Permit. In response, Objectors assert that the City and Steen did not preserve any objections to standing before the ZBA and, even if a challenge was preserved, each of the Objectors showed they have standing to challenge the issuance of the Permit.

 In order to have standing to appeal a determination of the ZBA, an appellant must demonstrate that he or she is an "aggrieved person." *Spahn v. Philadelphia Zoning Board of Adjustment,* 602 Pa. 83, 977 A.2d 1132, 1149–50 (2009). For a party to be "aggrieved," the party must "show an interest that is substantial, direct, and immediate." *Id.* at 1151 (citing *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269, 280 (1975)). For an interest to qualify as "substantial, there must be some discernible effect on some interest other than the abstract interest all citizens have in the outcome of the proceedings." *Id.; see also William Penn,* 346 A.2d at 280–81 (noting that "it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law"). An interest is direct where the party demonstrates "some causation of harm to his interest." *Spahn,* 977 A.2d at 1151. In order for an interest to be considered "immediate, there must be a causal connection between the action complained of and the injury to the person challenging it." *Id.* Therefore, to meet the three requirements for an aggrieved party, the party must demonstrate that the challenged action personally harms his or her interest in a way that is greater than that of another citizen. *Id.* at 1151–52. In *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Hearing Board of Adjustment of City of Philadelphia,* 951 A.2d 398 (Pa.Cmwlth.2008), *aff'd Spahn,* 977 A.2d at 1152, a case that was later consolidated with *Spahn,* we determined that a party in a zoning case may establish he is aggrieved by either demonstrating that he will be particularly

---

**10.** The ZBA has filed with this Court a notice of non-participation in this matter. Steen, as intervenor, has filed a brief with this Court in support of the trial court's Order.

harmed by or lives in the "immediate vicinity" of a subject property. *SCRUB*, 951 A.2d at 404.

Here, regardless of whether an objection to standing before the ZBA was preserved,[11] because property owned by Objector Chinese Christian Church is located within the immediate vicinity of the Property upon which the sign is located, the Chinese Christian Church has standing to object to the issuance of the Permit. The record shows that the Chinese Christian Church is located a short distance from the sign and, if the sign is converted to digital, the light therefrom will shine directly onto the church building and into the skylight located on the roof. (Hr'g Tr. at 48, September 12, 2012, R.R. at 225a; Hr'g Tr. at 14–15, December 12, 2012, R.R. at 71a; Photograph, R.R. at 842a; Written Testimony of John Chin, Executive Director of Philadelphia Chinatown Development Corporation, R.R. at 65a.) Thus, the proximity of the Chinese Christian Church to the sign is "sufficient to establish a perceivable adverse impact."[12] *SCRUB*, 951 A.2d at 404.

## B. Merits

In support of this appeal,[13] Objectors raise several issues;[14] however, the crux of Objectors' appeal is that L & I erred by issuing the Permit, as a matter of right, to convert the sign at issue here to digital because: (1) the sign is not legal or exists unlawfully; (2) L & I did not take into consideration that the conversion of the sign to digital will require structural changes to the sign and its supporting components; (3) L & I improperly relied upon the May 10, 2007 L & I Memorandum; (4) the conversion violates the Zoning Code's lighting provisions; (5) the conversion violates state and federal law; and (6) the conversion will be a public nuisance.

11. In reviewing the record in this matter, it is unclear whether Steen was able to intervene before the ZBA. The Board initially deferred ruling on whether Steen could intervene and eventually denied the motion at the end of the first hearing, after seeming to allow Steen's counsel to participate in the proceedings. (Hr'g Tr. at 2, 81, September 12, 2012, R.R. at 179a, 258a.) In its brief filed with this Court, Steen does not state that it was not permitted to intervene and recites, in detail, its participation during the ZBA hearings. Steen states that it and the City objected to the standing of all of the witnesses, but the objection was ignored by the ZBA. (Steen's Br. at 4.) Steen does not, however, cite to where in the record it and the City made an objection to the standing of each of the Objectors. However, we need not resolve this question because we find that at least one Objector has standing.

12. Because the Chinese Christian Church has standing and raised the issues before the ZBA, we need not address whether the other Objectors also have standing.

13. Our review in a zoning case, where the trial court has taken no additional evidence, "is limited to determining whether the [ZBA] committed a manifest abuse of discretion or an error of law." *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637, 639 (1983). The ZBA will be found to have "abused its discretion only if its findings are not supported by substantial evidence[,] ... mean[ing] such relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Id.* at 640.

14. The City and Steen contend that several of Objectors' issues have been waived because the issues were not preserved before the ZBA. It is well-settled that, where the trial court does not take additional evidence, a party waives any arguments which were not raised before the zoning hearing board. *Society Created to Reduce Urban Blight v. The Zoning Board of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth.2002). "This approach ensures that the fact finder has a full opportunity to create a reviewable record on all issues." *Id.* Because it is questionable whether some of the issues raised in this appeal were waived by Objectors, in the interest of fairness, we have restated the issues and will address each in turn.

Objectors also argue that the trial court erred by not taking additional evidence or remanding to the ZBA for further hearings. We first address whether the sign at issue is a legal or lawful sign.

### i. Whether the sign is legal

■ Objectors argue that because of the sign's location, it is a prohibited sign and subject to the Special Sign Controls for the area surrounding the Vine Street Parkway set forth in Section 14-1604.1 of the Zoning Code. Objectors argue further that the 2007 Consent Order is not binding on Objectors because there was no public proceeding where they were provided notice and an opportunity to be heard.[15] Objectors assert that it is also not binding on the City because the provisions of the 2007 Consent Order have not been enacted into law by City Council and the City Solicitor cannot bind the City through a litigation settlement or private agreement.

■ A consent decree or order "has a [r]es judicata effect, binding the parties with the same force and effect as a final decree rendered after a full hearing upon the merits." *Pennsylvania Human Relations Commission v. Graybill*, 482 Pa. 143, 393 A.2d 420, 422 (1978). Therefore, because the City was a party to the 2007 Consent Order, it is binding on the City regardless of whether the provisions contained therein have been enacted into law by City Council. In addition, absent fraud, accident or mistake, neither the ZBA, the trial court, nor this Court has the power or authority to modify or overturn the terms of the 2007 Consent Order. *Id.* Accordingly, the 2007 Consent Order is

not subject to a collateral attack by Objectors in zoning proceedings. *Id.*

The 2007 Consent Order settled two pending actions in the trial court. (2007 Consent Order, R.R. at 298a.) The pending action relevant to the present matter concerned the "lawfulness of two outdoor advertising sign structures" owned by Steen, including the sign at issue here. (2007 Consent Order, R.R. at 298a.) In the 2007 Consent Order, the City and Steen agreed that the sign was "built in compliance with all applicable Off-Premise Outdoor Advertising Sign provisions of the Philadelphia Zoning Code and all applicable City of Philadelphia laws and regulations at the time [the] sign was built and subsequently modified by Steen.... and that the [sign is] lawful in all respects." (2007 Consent Order, R.R. at 299a–300a.) Accordingly, the sign at issue in this matter is legally permitted and lawfully in existence. (December 17, 2007 Memorandum, R.R. at 297a.) Moreover, there is no evidence in the record to support a finding that, at the time Steen applied for the Permit, the sign no longer complied with the Zoning Code or any other applicable law or regulation promulgated by the City such that the sign's status would have changed from lawfully permitted to unlawfully in existence. Therefore, not only is the 2007 Consent Order controlling as to the legality of the sign, as the ZBA determined, because the sign is legal pursuant to the 2007 Consent Order, the Special Sign Controls governing the removal of *prohibited* signs in the area of the Vine Street Parkway are not applicable to the

---

**15.** We note that Objectors do not argue that they were not aware of a proposed settlement or that they had no procedural opportunity to participate in the litigation that was settled by the 2007 Consent Order. *See The Boeing Company v. Zoning Hearing Board of Ridley Township,* 822 A.2d 153 (Pa.Cmwlth.2003) (holding that a non-party to a settlement agreement was bound thereby because it had notice of a proposed consent decree and a procedural opportunity to participate in the underlying litigation). Moreover, there was no such finding by the ZBA or the trial court.

issue of whether L & I properly issued the Permit in this matter.

### ii. Whether the conversion requires structural changes to the sign

■ Having determined that the sign at issue here is legal and lawfully in existence, we turn to the issue of whether L & I erred by issuing the Permit without considering whether the conversion of the sign to digital will require structural changes to the sign and its supporting components. In support of this issue, Objectors advance several arguments.

First, Objectors contend that there is no doubt, based on the evidence they presented, that changing the sign to digital will require that the sign, frame, and support system undergo dramatic changes. Thus, Objectors argue that the Permit was erroneously issued without requiring construction plans. Objectors argue further that the ZBA abused its discretion or erred by denying the subpoena to compel the attendance of a Steen representative at the hearings to testify regarding the structural details of the conversion, including what changes in depth and weight would be required to complete the conversion.

The Permit that was issued in this matter was a zoning permit to use the Property for a digital outdoor advertising sign. L & I issued the zoning Permit based on the legality of the sign and the provisions of the Zoning Code in existence in March 2012. Dahal, L & I's plan examiner, testified that she reviewed the Permit application and issued the Permit, as of right, because the sign was a legally permitted sign and the conversion of the sign face from static to digital did not violate the relevant provisions of the Zoning Code. (FOF ¶¶ 13–14.) Dahal testified further that the zoning administrator does not receive or need to receive technical plans regarding the construction required to convert a sign because the office within L & I that issues building permits will decide

the impact of the conversion on the sign's structure. (FOF ¶ 15.) Dahal's testimony is supported by the City's Building Construction and Occupancy Code (Building Code) found in Title 4 of the Philadelphia Code.

Pursuant to Chapter 3 of Subcode A of the Building Code, known as the Philadelphia Administrative Code, a property owner must file an application with L & I for a building permit in order to, *inter alia*, modify or improve an existing structure, such as a sign. Subcode A, Section A–301.1.1. The application must include construction documents that indicate the location, nature and extent of the work proposed, and adequate details of the structural, mechanical and electrical work that will be required. Subcode A, Sections A–301.6, A–305.1. In addition, an applicant for a building permit must secure a zoning permit. Subcode A, Section A–301.1.5. Any activity for which a building permit is required "shall not, commence without a permit being issued." Subcode A, Section A–301.1. Based on Dahal's credible testimony as to the procedures for issuing zoning permits and the foregoing provisions of the City's Building Code, L & I did not err by not requiring Steen to submit construction plans when considering whether to issue the Permit in this matter.

Moreover, the evidence presented by Objectors does not support a finding that the conversion will require structural changes to the sign. Before the ZBA, Objectors submitted the testimony of Diemer, a lighting expert, to show that converting the sign to digital would require structural changes. Diemer testified that, in order to convert the existing sign face to digital, the sign face would need to be larger and heavier and the sign would need to be thicker. (FOF ¶ 23.) However, the ZBA did not find Diemer credible.

Such a determination is well within the province of the ZBA. *See Nettleton v. Zoning Board of Adjustment of the City of Pittsburgh,* 574 Pa. 45, 828 A.2d 1033, 1041 n. 10 (2003) (stating that the ZBA "as factfinder is the sole judge of credibility and conflict in the testimony and has the power to reject even uncontradicted testimony that the [ZBA] finds to be lacking in credibility"). The ZBA determined that there was no record evidence to support Objectors' contentions that the depth of the sign would change if the sign was converted to digital. (COL ¶ 7.)

Accordingly, because Steen's application requested a zoning permit, and not a building permit, the determination of whether the conversion would result in structural changes to the sign was not an issue for consideration by L & I in issuing the Permit.[16] Thus, L & I did not err by issuing the Permit without requiring construction plans and the ZBA did not abuse its discretion by not allowing Objectors to subpoena a representative from Steen to testify regarding how the conversion would affect the structure of the sign. The Permit was issued on the assumption that no structural changes to the sign were necessary; if that assumption turns out to be incorrect, arguably a new Permit would need to be requested.

Next, notwithstanding the fact that L & I was not required to consider structural changes or require construction plans when issuing the Permit, Objectors argue that this Court's precedent required that the ZBA find, as a matter of law, that a conversion to a digital sign is not a mere "sign face" change and involves structural changes to all aspects of an outdoor advertising sign. Objectors argue that this Court held, in both *Lamar Advertising Co. v. The Zoning Hearing Board of the Mu-*

*nicipality of Monroeville,* 939 A.2d 994 (Pa.Cmwlth.2007) (*Lamar I*), and *Lamar Advantage GP Co. v. Zoning Hearing Board of Adjustment of the City of Pittsburgh,* 997 A.2d 423 (Pa.Cmwlth.2010) (*Lamar II*), that the conversion of a sign to digital was not a mere change in the sign face, but was a structural change. Although Objectors recognize that the ordinances at issue in *Lamar I* and *Lamar II* are different than the relevant provisions of the Zoning Code at issue here, they argue that the point is the same—the components making up the sign are all part of a single system, which is structural. Objectors assert that this conclusion is supported by the September 27, 2013 L & I issued Code Bulletin of Information (September 2013 Code Bulletin) that effectively reverses the May 10, 2007 L & I Memorandum based on this Court's decisions in *Lamar I* and *Lamar II.* Objectors contend that the September 2013 Code Bulletin states that "[c]onverting a standard static display sign face to a digital display sign face necessarily involves [a] substantial alteration, reconstruction and conversion of the billboard structure." (September 2013 Code Bulletin at 2, R.R. at 498a.) Objectors argue that, because this Court's decisions in *Lamar I* (2008) and *Lamar II* (2010) were in effect before the Permit was issued in this case in March 2012, L & I's reliance on the May 10, 2007 L & I Memorandum, December 17, 2007 Memorandum, and 2007 Consent Order was fundamentally flawed and incorrect as a matter of law; therefore, L & I erred by issuing the Permit as of right.

Objectors' reliance on *Lamar I, Lamar II,* and the September 2013 Code Bulletin is misplaced. Our decisions *Lamar I* and *Lamar II* were not based upon the provisions of the Zoning Code, but instead in-

---

**16.** Because L & I was not required to consider structural changes to the sign as a result of the conversion in issuing the Permit, we need not address Objectors' argument that the conversion cannot take place without a variance.

terpreted the zoning ordinances of the Municipality of Monroeville and the City of Pittsburgh. In addition, those cases dealt with non-conforming signs whereas, here, the sign is a legally permitted sign. Also, L & I's September 2013 Code Bulletin governing "Conversion of Outdoor Advertising Signs to Digital Display" is inapplicable because it was issued in response to the 2012 and 2013 changes to the Zoning Code. (September 2013 Code Bulletin at 1, R.R. at 497a.) As stated previously, the Permit at issue in this matter was issued in March 2012, before the 2012 amendments to the Zoning Code took effect on August 22, 2012. Because of the 2012 amendments and the subsequent 2013 amendments, L & I issued the September 2013 Code Bulletin, which revisits when permits are required when converting an existing sign face to a digital display pursuant to the *current* Zoning Code. (September 2013 Code Bulletin at 1, R.R. at 497a.) As concluded by L & I in the September 2013 Code Bulletin, the Zoning Code now includes a section adopted as 14–903, setting forth when signs require or do not require zoning permits. The September 2013 Code Bulletin reflects the distinction set forth in the current Zoning Code "between a sign face change, where structural or electrical additions are not involved, and digital conversion, which is not considered the equivalent of a content change on a sign face." (September 2013 Code Bulletin at 2, R.R. at 498a.) There is no such distinction in the provisions of the Zoning Code that governed the March 2012 issuance of the Permit in this case. Thus, as previously stated, the Permit was issued on the assumption that no "structural or electrical additions" were involved. If such additions are involved, these provisions arguably would not apply and a new Permit would be necessary.

Accordingly, we conclude that the ZBA was not required to find at this time, as a matter of law, that the conversion of the sign at issue here to a digital sign is a structural change.[17]

### iii. Whether L & I improperly relied upon the May 10, 2007 L & I Memorandum

Objectors argue that L & I improperly relied upon the May 10, 2007 L & I Memorandum when reviewing Steen's application for the Permit to convert the sign at issue here to digital. Objectors assert that the May 10, 2007 L & I Memorandum was issued without any basis in the law by an L & I Commissioner. Objectors contend that, although the Commissioner states that she consulted the Law Department, she offers no specifics as to whom she spoke with or the basis of the Law Department's opinion that a permit to change a sign face from static to digital should be issued as of right. Objectors argue further that the May 10, 2007 L & I Memorandum was not published as an L & I Code Bulletin of Information; thus, it has no binding force. Finally, Objectors assert that because the May 10, 2007 L & I Memorandum erroneously interprets the Zoning Code to mean that the conversion of the sign face from static to digital would not require structural changes, this Court may not give it deference.[18]

 The City and L & I, as a department of the City, are empowered to

---

17. Because we conclude that the ZBA was not required to find, as a matter of law, that the conversion of the sign to digital is a structural change, we will not consider Objectors' argument that decisions by other jurisdictions support a finding that the conversion is a structural change.

18. Objectors again argue that the May 10, 2007 L & I Memorandum was superseded by this Court's decisions in *Lamar I* and *Lamar II*. However, as stated previously, this Court's decisions in *Lamar I* and *Lamar II* are not applicable to this matter.

interpret the City's ordinances and formulate policy regarding how the ordinances should be implemented. *See Department of Environmental Protection v. North American Refractories Company*, 791 A.2d 461, 465 (Pa.Cmwlth.2002) (recognizing that administrative actors "possess authoritative interpretive powers" and are "more likely to develop the expertise relevant to assessing the effect of a particular regulatory interpretation" (citation and internal quotation marks omitted)). Moreover, due to changing circumstances or amendments to ordinances and regulations, the City may change its policies and interpretations of its laws. It is well-settled that some deference must be given to the interpretation of an ordinance by the entity that is charged with administering the ordinance and that courts cannot substitute judicial discretion for administrative discretion. As explained by our Supreme Court:

First, it is to be presumed that municipal officers properly act for the public good. Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the Wisdom of municipal actions and Judicial discretion should not be substituted for Administrative discretion.

*Weber v. City of Philadelphia*, 437 Pa. 179, 262 A.2d 297, 299 (1970) (citations omitted).

At the time Steen submitted its application for the Permit in this matter, the duty and power to administer the provisions of the Zoning Code was vested in L & I and all applications for zoning permits were required to be filed with, and approved by,

L & I. Sections 14–1702(1) and 14–1703 of the Zoning Code.[19] Accordingly, L & I is the administrative actor within the City that has the expertise in the area of zoning and, as such, possesses authoritative interpretive powers to determine which provisions of the Zoning Code are relevant to permit applications and how those provisions should be interpreted. With respect to zoning permit applications to convert existing legally permitted signs to digital, L & I issued the May 10, 2007 L & I Memorandum, which sets forth the relevant provisions of the Zoning Code and how those provisions are to be interpreted. The fact that the May 10, 2007 L & I Memorandum was not published as a Code Bulletin is of no moment. Whether L & I's interpretation of the Zoning Code is set forth in a memorandum or a Code Bulletin, deference must be given to L & I's interpretation "absent proof of fraud, collusion, bad faith or abuse of power." *Weber*, 262 A.2d at 299. There is no proof of fraud, collusion, bad faith, or abuse of power in the record in this matter.

Thus, we conclude that L & I did not improperly rely on the May 10, 2007 L & I Memorandum when determining whether to issue the Permit to convert the sign at issue here to digital. Moreover, because we have previously determined that L & I was not required to consider structural changes to the sign when reviewing Steen's application for a Permit, we do not find Objectors' argument persuasive that the May 10, 2007 L & I Memorandum erroneously interprets the Zoning Code.

#### iv. Whether the conversion violates the Zoning Code's lighting provisions

Objectors argue that the conversion of the sign to digital violates the

---

**19.** Under the current version of the Zoning Code, L & I remains responsible for final action regarding zoning permits. Section 14–

301(5)(b) of the Zoning Code (effective August 22, 2012).

lighting provisions set forth in Section 14–1604(8) of the Zoning Code. Section 14–1604(8) governed "Outdoor Advertising and Non–Accessory Advertising Controls" and provided as follows:

(8) *Illuminated, Animated, Flashing, and Revolving Sign Regulations.*

(a) Signs may be illuminated; provided, that the illumination shall be focused upon the sign itself, so as to prevent glare upon the surrounding areas.

(b) Flashing signs, signs with intermittent illumination, or signs with mechanically or electronically changing messages shall neither be erected within five hundred feet of any residential district, nor face any residential district within one thousand feet of the sign.

(c) Signs which revolve shall require a certificate from the Zoning Board of Adjustment.

(Section 14–1604(8), R.R. at 1132a.) Objectors assert that because there is no "or" after each subsection of Section 14–1604(8), each of the foregoing requirements must be met; however, the conversion violates subsection (a) because the illumination will not be focused on the sign, but instead will project out onto the neighboring properties. Objectors argue that subsection (b) cannot be read as an exception to subsection (a) by simply making the sign flashing, intermittently illuminated, or electronically changing. Objectors contend that their lighting expert's uncontradicted testimony was that the illumination of a digital sign does not focus on the sign itself as required by Section 14–1604(8) of the Zoning Code, but instead the light is focused outward and is much brighter than a conventional billboard.[20]

Objectors argue that L & I should have denied the Permit for this reason alone.

Section 14–1604(8) regulates four different types of signs: (1) illuminated; (2) animated; (3) flashing; and (4) revolving. Subsection (a) regulates illuminated signs and subsection (b) regulates "[f]lashing signs, signs with intermittent illumination, or signs with mechanically or electronically changing messages." (Section 14–1604(8)(a), (b), R.R. at 1132a.) As stated above, Section 14–1604(8)(b) specifically provides that "signs with mechanically or electronically changing messages shall neither be erected within five hundred feet of any residential district, nor face any residential district within one thousand feet of the sign." (Section 14–1604(8)(b), R.R. at 1132a.) Accordingly, when determining which sections of the Zoning Code were relevant to digital or electronic messages on outdoor advertising signs, L & I concluded that such signs must comply with Section 14–1604(8)(b) as subsection (b) specifically regulates signs with electronically changing messages. Given the provisions of Section 14–1604(8) that distinguish between different types of signs, we conclude that L & I's interpretation was not erroneous.

### v. Whether the conversion violates state and federal law

Objectors argue that outdoor advertising signs are governed and regulated in Pennsylvania via the Federal Beautification Act and Pennsylvania's adoption thereof in its Outdoor Advertising Control Act of 1971[21] (Pennsylvania Outdoor Advertising Act). Objectors assert that the May 10, 2007 L & I Memorandum is a *de facto* regulation of such signs created via this private inter-

---

**20.** We note that Objectors presented the testimony of their lighting expert to the ZBA as support for their argument that the increased illumination from the converted sign would be a public nuisance.

**21.** Act of December 15, 1971, P.L. 596, *as amended,* 36 P.S. §§ 2718.101–2718.115.

nal memorandum between L & I and zoning officials. As such, it is an unauthorized regulation of outdoor advertising signs in contravention of the Federal Beautification Act and the Pennsylvania Outdoor Advertising Act.

Objectors argue further that the Pennsylvania Outdoor Advertising Act, and the regulations promulgated thereunder, prohibit intermittent lighting on outdoor advertising signs next to interstates and limited access highways. *See* Section 105(c)(3)(iv) of the Pennsylvania Outdoor Advertising Act, 36 P.S. § 2718.105(c)(3)(iv) (governing the criteria for size, spacing and lighting and prohibiting "[s]igns which contain, include or are illuminated by a flashing, intermittent, or moving light or lights"); 67 Pa.Code § 445.4(b)(3)(iv) (governing signs in zoned or unzoned commercial or industrial areas and prohibiting "[s]igns which contain, include or are illuminated by a flashing, intermittent or moving light or lights"). Objectors assert that digital signs create intermittent light and the May 10, 2007 L & I Memorandum concedes that digital signs create intermittent light. Thus, Objectors contend, issuing the Permit in this case violated the Pennsylvania Outdoor Advertising Act. As further support for this argument, Objectors cite to *Scenic Arizona v. City of Phoenix Board of Adjustment*, 228 Ariz. 419, 268 P.3d 370 (App. Div. 1 2011), where the court held that an electronic billboard adjacent to Interstate 17 violated Arizona's Beautification Act because the act specifically prohibited the use of intermittent lighting. Objectors note that the Arizona legislature changed its law in 2012 to permit intermittent lighting on electronic outdoor advertising signs;

however, they contend that there is no such exception under the Pennsylvania Outdoor Advertising Act.

Although Objectors stated in their appeal to the ZBA that the issuance of the Permit violated the Federal Beautification Act, and also stated the same during the hearings before the ZBA, Objectors did not specifically mention or present any evidence regarding how or why the conversion would violate the Pennsylvania Outdoor Advertising Act. With respect to whether the conversion violated the Federal Beautification Act, Objectors simply stated, without specification, that a digital sign would result in a violation. (Hr'g Tr. at 45, December 12, 2012, R.R. at 78a.) Accordingly, the ZBA made no findings or conclusions as to what type of light would be emitted from the converted sign, whether the May 10, 2007 L & I Memorandum constituted a *de facto* regulation of outdoor advertising signs in violation of the Federal Beautification Act or the Pennsylvania Outdoor Advertising Act, whether L & I's reliance on the May 10, 2007 L & I Memorandum in issuing the Permit violated federal or state law, or whether the converted sign would violate the Pennsylvania Outdoor Advertising Act.[22] Moreover, Objectors' reliance on *Scenic Arizona* is misplaced. Although Arizona's Beautification Act may have been similar to the Pennsylvania Outdoor Advertising Act, we are not bound by the Arizona court's decision. Thus, we decline to address further Objectors' arguments that the May 10, 2007 L & I Memorandum constitutes a *de facto* regulation and that the converted sign will violate federal and state law.

---

**22.** We note that, pursuant to the regulations promulgated under the Pennsylvania Outdoor Advertising Act, an annual permit issued by the Department of Transportation is required for signs regulated under the statute, including signs in commercial and industrial zones, unless "the local political subdivision has a legally established and operating procedure for issuing the permits." 67 Pa.Code § 445.6(a)(4).

### vi. Whether the conversion of the sign to digital is a public nuisance

 Objectors argue that the ZBA had the authority to hear Objectors' public nuisance claims because the claims go to the welfare of the community. Objectors assert that the evidence shows that the conversion would be detrimental to the public as a whole and the ZBA erred by ignoring the vastly disparate impact that a digital billboard burdens a community with in relation to a conventional billboard. Objectors contend that they presented overwhelming evidence proving the adverse impact a digital sign would have on the neighborhood.

As explained by this Court:

(1) A public nuisance is an unreasonable interference with a right common to the general public.

(2) *Circumstances that may sustain a holding that an interference with a public right is unreasonable* include the following:

 (a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience;

 (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

 (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

*Muehlieb v. City of Philadelphia*, 133 Pa. Cmwlth. 133, 574 A.2d 1208, 1211 (1990) (quoting Restatement (Second) of Torts § 821B) (emphasis in original). Our review of Objectors' testimony reveals that the testimony was insufficient to prove that the conversion would be detrimental or have an adverse impact on the surrounding neighborhood. Because a build-ing permit has not yet been issued, the type of digital sign that is going to be installed has not yet been determined. As such, there was no testimony or evidence regarding how bright the actual sign will be or that the brightness of the sign will be adverse during the daytime, for example, when the neighboring school is in session or when the Chinese Christian Church would be having services or other activities. There was also no evidence regarding how the sign would look; thus, testimony that it would be garish is speculation. While a representative of the Post Brothers testified that the light from the digital sign would shine into the bedrooms of apartments yet to be constructed, the representative offered no evidence to support her testimony. In short, Objectors' testimony was based upon their own personal beliefs or their dislike for digital signs in general.

Accordingly, the ZBA did not err by rejecting Objectors' public nuisance claims at this point in the proceedings.

### vii. Whether the trial court erred by not taking additional evidence or remanding to the ZBA for further hearings

Finally, Objectors argue that the record made before the ZBA was not full and complete; therefore, the trial court should have taken additional evidence or remanded to the ZBA for further hearings. Objectors assert that the ZBA refused to require any action plans on the new proposal and denied Objectors' subpoena request for testimony by persons employed by Steen with the technical knowledge of how the sign would be constructed. Objectors contend that Steen's admission that it had no plans to show how the conversion would change the sign's structure should have cemented L & I's failure to show that it acted properly in issuing the Permit.

Upon review of the entire record in this matter, we conclude that a remand for further hearings is not warranted because the record was complete before the ZBA. The ZBA held two hearings during which Objectors were able to present evidence to support the assertion that L & I should not have issued the Permit as of right. Objectors were given every opportunity to present their case. As we have determined previously, because L & I is not required to make a determination as to whether the conversion would require structural changes when issuing a zoning permit, the ZBA did not abuse its discretion by not granting Objectors' subpoena request. Moreover, it was well within the province of the ZBA to not accept the testimony of Diemer, Objectors' lighting expert, with regard to how the structure or depth of the sign would change if the sign face is converted to digital. *Nettleton*, 828 A.2d at 1041 n. 10. Accordingly, there was no error by the trial court in not taking additional evidence or remanding to the ZBA for additional hearings. However, if structural changes are required to convert the sign to digital, a different inquiry would be necessary before the conversion is completed because this Permit does not appear to authorize such changes.

### III. CONCLUSION

For the foregoing reasons, the trial court's Order is affirmed.

Judge McGINLEY and Judge LEADBETTER did not participate in the decision in this case.

### ORDER

NOW, June 17, 2015, the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is hereby **AFFIRMED.**

DISSENTING OPINION BY President Judge PELLEGRINI.

What is involved in this appeal is a large 20–foot by 60–foot doubled-faced static billboard, located on a monopole high above the ground, which is to be converted to digital billboard—televisions on a stick. Purportedly the sign is a prohibited sign because it is subject to the Special Sign Controls for the area surrounding the Vine Street Parkway set forth in Section 14–1604.1 of the Philadelphia Zoning and Planning Code (Zoning Code). Without considering whether the sign is prohibited, the majority finds that the matter was settled because in 2007, the trial court entered a consent order between the City and Steen, the signboard company that owned eight outdoor advertising signs, including the one at issue, stating that those signs complied with the Off–Premise Outdoor Advertising Sign provisions of the Zoning Code then in effect, and that the signs were lawful in all respects. Even though there is no showing that Objectors were provided notice and an opportunity to be heard before the 2007 consent order was entered, it holds that the zoning board, the trial court and this Court do not have the power or authority to modify or overturn the terms of the 2007 consent order.

I respectfully dissent because, even under existing case law, the 2007 consent order is not binding on non-parties where there is no showing that Objectors had notice and an opportunity to be heard regarding that order.

Generally, consent decrees are only binding on the parties that consented to its entry. In *Pennsylvania Human Relations Commission v. Ammon K. Graybill, Jr., Inc., Real Estate*, 482 Pa. 143, 393 A.2d 420, 423 (1978), our Supreme Court set forth the nature of a consent decree and who is bound:

Although a consent decree does not represent a legal determination by a court or administrative tribunal of the matters in controversy, it nevertheless has important consequences. A consent decree has a *res judicata* effect, binding the parties with the same force and effect as a final decree rendered after a full hearing upon the merits.

\* \* \*

Given the conclusive nature of a consent decree, it is imperative that each party to it has willingly and freely assented to its terms. Like any contract, a consent decree requires mutuality of understanding and concerted action by the parties.

While consent decrees are not normally binding on non-parties, we have held in the context of the settlement of zoning disputes that if the party knew that the dispute was going to be settled, non-parties are bound to its terms. This departure from the normal effect of consent decrees on third parties had its origin in *Summit Township Taxpayers Association v. Summit Township Board of Supervisors*, 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980). That case involved a landfill which had been determined to be a legal, non-conforming use in an R–2 Residential District. The owner sought to expand operations onto an adjoining parcel of land.

The landfill owner initiated a curative amendment proceeding challenging the township's zoning ordinance on the basis that it improperly made no provision for the operation of a landfill within the township. The zoning hearing board rejected the landfill owner's curative amendment. The owner appealed this decision to the common pleas court. Prior to the common pleas court's ruling on the appeal, the landfill owner and the township entered into negotiations, and after publication and

notice, the zoning hearing board conducted a public hearing. At the conclusion of the hearing, the board of commissioners "authorized counsel to execute a stipulation settling appeal." *Id.* at 1265. Shortly thereafter, the common pleas court issued an order adopting the provisions negotiated by the parties in which the landfill owner's appeal was sustained and the township was ordered to issue the necessary zoning permit so that the landfill could operate on the adjoining parcel of land, which operation would occur under "negotiated conditions." *Id.*

Those objectors appealed from the township commissioners' action authorizing the consent decree because, among other reasons, it was an unjustified grant of a variance. They contended that because they had been interested and actively engaged as parties to the landfill expansion, they should be allowed to challenge the expansion even though they had not intervened in the landfill owner's zoning appeal. Affirming the common pleas court, we rejected that contention stating that to participate in the settlement, both parties had to be before the zoning hearing board and had to timely intervene in the landowner's appeal to protect their rights, stating:

> The association also contends that the stipulation entered into by the parties was in fact a grant of a variance, in violation of Section 912 of the [Pennsylvania Municipalities Planning Code (MPC) [1]], which invests the zoning hearing board with the exclusive power over variance actions. However, here the actual decisive event was the settlement of a judicial proceeding, under court supervision. Because court-approved settlements of zoning cases are lawful, we must recognize such settlements as being distinct from zoning hearing board variances; even though a judicial settle-

---

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10912.

ment may result in a departure from the ordained zoning pattern, that kind of departure falls within the court's jurisdiction, not the board's jurisdiction.

The objectors' real concern here is that if parties to zoning appeals can settle them by stipulation, the procedures and purpose of the MPC may be totally circumvented. However, the law favors settlement, and we should not permit a collateral attack on a settled appeal where those now seeking relief have failed to avail themselves of procedures to insure their participation. (Citations omitted.)

*Id.* at 1265–66.

While our holding seems to sanction "circumventing" zoning laws through consent orders because settlements are favored, there was a certain "regularity" to the proceeding. The consent order was entered within the confines of a zoning appeal where, in the underlying zoning board case, everyone was given statutory notice, and after the settlement was issued, the zoning hearing board held a hearing and gave notice of the proposed settlement at which everyone could participate.

However, in *Boeing Co. v. Zoning Hearing Board of Ridley Township*, 822 A.2d 153 (Pa.Cmwlth.2003), we expanded those who are bound by the consent orders to include those who were not actively involved in any of the disputes and only become aware of the proposed settlement by happenstance and then shortly before the settlement was to be executed.

In that case, an adult entertainment facility had been operating as a nonconforming use in a residential district. A number of lawsuits had arisen between the owner of the adult entertainment facility and the township: one in the common pleas court, one in our Court, and one before a federal district court. The parties reached an agreement to settle all of the litigation which would be incorporated by the federal district court into a consent decree. As part of the consent decree, it was agreed that the facility would be allowed to move to a particular industrial park where adult entertainment facilities were to be allowed, but only by special exception.

Boeing owned land next to where the adult entertainment facility was permitted under the new zoning regulations. It intended to open a day-care center on its adjacent property. After learning of the pending settlement discussions from an article in the local newspaper, Boeing sought a meeting with township officials. On November 10, 2000, township officials met with Boeing and gave it copies of the proposed settlement and consent decree, the pending cases that it would settle, and a new set of zoning regulations that were tailored specifically to allow adult entertainment facilities at the new location that would be adopted to effectuate the settlement. The township officials also informed it that the settlement would be voted on at the November 21, 2000 commissioner's meeting.

After the township approved the settlement as promised and the settlement agreement was entered into on December 7, 2000, but before the federal court entered the consent decree on January 5, 2001, Boeing filed a notice of appeal to the zoning hearing board contending that the settlement was an illegal contract and constituted spot zoning. The zoning hearing board rejected Boeing's contract and spot zoning arguments and noted that, hypothetically, if the zoning hearing board were to receive an application for a special exception to operate an adult entertainment facility in the industrial area, it would approve such an application.

Agreeing with the trial court, we stated that a non-party was bound by the settlement agreement if it had a procedural

opportunity to participate in the underlying matters encompassed by the settlement agreement. Because Boeing was made aware of the global settlement and how it would impact its property on November 10, 2000, Boeing had an opportunity to take any number of legal steps to insure that it would be heard on the issue and it could not challenge the settlement agreement. However, we noted that:

This approach is not without its critics. One set of commentators described our jurisprudence on this issue: "In effect, Pennsylvania courts reserve for themselves the power to permit and enforce unconstitutional zoning actions, collaterally estopping the public from intervening and attacking board action which, although contravening a board's limited police power, are taken pursuant to a judicially approved settlement." *Settling Land Use Litigation While Protecting the Public Interest: Whose Lawsuit is this Anyway*, 23 Seton Hall L. Rev. 844, n. 56 (1993). These same commentators further stated that:

The Pennsylvania approach raises legitimate concerns about the breadth of both the municipality's and the court's authority.... This judicial arrogation of authority, as some critics might describe it, may simply be judicial deference to the result that the governing agency has, in fact, determined to be in the public's best interest.... Nevertheless, any time the courts sanction and enforce a settlement without permitting public participation, considerations of fairness, procedural due process and the appearance of evenhanded justice dictate close scrutiny.

*Id.* at 163 n. 19.

The majority takes the position that Objectors do not argue that they were not aware of a proposed settlement or that they had no procedural opportunity to participate in the litigation that was settled by the 2007 consent order. I would hold that under *Boeing,* it is the burden of those trying to show that their settlement binds a non-party to show that those parties have received formal notice, memorialized on the docket in that case, and if they want to oppose it, they have to intervene. In this case, there is not even a showing that Objectors were even aware of the settlement and we should not blithely apply a settlement to non-parties absent a showing of notice.

Even though I would reverse based on a lack of showing of notice, I would go further and reverse *Boeing.* I would limit the binding effect of a settlement on non-parties only when, as in *Summit Township Taxpayers Association,* it involves the settlement of zoning litigation that started out before the zoning hearing board and the requisite public notice was posted and advertised that an application had been filed and that a hearing would be held. The world then had notice and a party who chose not to participate in the hearing cannot complain.

Accordingly, because I would remand this matter to the trial court to determine the legality of the sign in question under the Zoning Code, I respectfully dissent.

Judge McCULLOUGH joins in this dissenting opinion.