**LAMAR ADVERTISING COMPANY, a Delaware Corporation, Appellant**

v.

**The ZONING HEARING BOARD OF the MUNICIPALITY OF MONROEVILLE.**

**Lamar Advertising Company, a Delaware Corporation**

v.

**The Municipality of Monroeville, a Home Rule Municipality, and Shelly Kaltenbaugh, in her capacity as Director of Community Development.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 2007.

Decided Dec. 17, 2007.

Reargument Denied En Banc Feb. 13, 2008.

Jonathan M. Kamin, Pittsburgh, for appellant.

Robert J. Wratcher, Pittsburgh, for appellee, the Zoning Hearing Board of the Municipality of Monroeville.

Craig H. Alexander, Pittsburgh, for appellees, the Municipality of Monroeville and Shelly Kaltenbaugh.

BEFORE: SMITH–RIBNER, COHN JUBELIRER and LEAVITT, JJ.

OPINION BY Judge LEAVITT.

Lamar Advertising Company (Lamar) appeals an order of the Court of Common Pleas of Allegheny County (trial court) that disapproved Lamar's two separate proposals to rebuild a number of its billboards in the Municipality of Monroeville. First, the trial court denied Lamar's request for a writ of mandamus, finding that it was not entitled to a deemed approval of one application. Second, the trial court affirmed the decision of the Zoning Hearing Board of the Municipality of Monroeville (ZHB) that Lamar's proposal to replace the vinyl advertising copy on seventeen billboards with electronic signs required conditional use and site plan approval under the Zoning Ordinance. For the reasons that follow, we will affirm the trial court.

**Background to Mandamus Action**

Lamar owns and operates advertising billboards throughout the United States, including billboards of varying sizes in Monroeville. On January 31, 2005, Lamar applied for a permit to remove the conventional display on one existing billboard, located on Block and Lot No. 542–D–152, and to replace it with a light emitting diode (LED) display. The application did not seek to make any changes to the superstructure of the billboard. On

April 7, 2005, Shelly Kaltenbaugh, Monroeville's Director of Community Development, informed Lamar in writing that its application was incomplete and requested additional information. On April 13, 2005, Lamar supplied additional information. However, no formal action was taken on Lamar's permit.

On August 26, 2005, 132 days later, counsel for Lamar sent a letter to Kaltenbaugh asserting that, pursuant to the Pennsylvania Construction Code Act [1], its sign permit application had been "deemed approved" because Monroeville had failed to take formal action on Lamar's application. In response, on September 8, 2005, Kaltenbaugh again advised Lamar, in writing, that its application was incomplete. Kaltenbaugh advised Lamar that it was required to obtain a conditional use and site plan approval for its proposal to replace the billboard's conventional display with an LED display. Kaltenbaugh's letter also contained the fee schedule, meeting dates, and submission deadlines for the submission of a conditional use application for the billboard alteration. Finally, Kaltenbaugh's letter returned Lamar's application materials.

On October 7, 2005, Lamar filed an action in mandamus seeking to compel Monroeville to issue it a sign permit. Lamar contended, as it had in its letter to Kaltenbaugh of August 26, 2005, that under the Construction Code Act, Lamar's permit application was deemed approved.

**Background to ZHB Appeal**

On August 26, 2005, Lamar submitted seventeen separate sign applications to Monroeville, seeking to remove the existing billboard displays and replace them with LED displays. As with its January

---

1. Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101–7210.1103 (Construction Code Act).

2005 single sign proposal, Lamar stated that it did not intend to change the super-structure of the billboards.[2]

On September 8, 2005, Monroeville denied Lamar's sign permit applications. In her letter to Lamar, Kaltenbaugh stated that Lamar's proposed conversions were alterations to billboards and, as such, Lamar had to obtain a conditional use and site plan approval before a building permit could be considered. The letter included the application form, fee schedule, and deadlines for submission of the conditional use application for a billboard. Lamar's seventeen applications were returned.

On October 7, 2005, Lamar appealed Kaltenbaugh's determination to the ZHB. Lamar argued that because the LED screen simply replaces the vinyl advertising copy, it was a modernization to a lawful nonconforming use to which Lamar was entitled as of right. Further, Lamar contended that the proposal did not involve any change to the existing billboard structure, only a change in the "sign face," and, thus, was not subject to the Zoning Ordinance. The ZHB disagreed.

The ZHB concluded, first, that Lamar had not presented any evidence that the billboards were lawful nonconforming structures. Next, the ZHB concluded that an LED screen was not a "sign face," as that term is used in the Ordinance. Because the LED screens require electric services and cables, as well as air conditioning units that will be permanently bolted to the billboards, the ZHB held that Lamar's proposal would change the billboard structures. These proposed structural changes triggered the need for conditional use and site plan approval in accordance with the Zoning Ordinance. Lamar filed a timely appeal from the ZHB's decision.

### Trial Court Decision and Appeal

On May 14, 2007, the trial court issued an order denying Lamar's claim for a writ of mandamus and affirming the ZHB's denial of Lamar's seventeen sign permit applications.[3] The trial court held that Lamar was not entitled to a writ of mandamus due to the fact that "Lamar did not submit the proper [a]pplications for a billboard." Trial Court Opinion, May 14, 2007, at 3. With respect to Lamar's appeal, the trial court held that the proposed installations of LED screens altered the billboard structures, thereby triggering the conditional use and site plan approval requirements of the Zoning Ordinance. Accordingly, the trial court affirmed the ZHB.

On appeal to this Court, Lamar raises the same issues. First, Lamar asserts that it was entitled to a deemed approval of its single sign permit application because Monroeville took no formal action for over thirty days. Second, Lamar asserts that the replacement of the existing vinyl signage with LED screens is a simple change in "sign face" that is not subject to the conditional use and site approval requirements of the Zoning Ordinance. We consider Lamar's issues *seriatim.*

### Lamar's Action in Mandamus

■ Lamar argues that Monroeville can be compelled by a writ of mandamus to issue Lamar a permit to replace the conventional display of its billboard located on Block and Lot No. 542–D–152 with an LED display.[4] Lamar argues that its sign

---

2. One of the seventeen sign permit applications included the single billboard that was the subject of Lamar's mandamus action.

3. The trial court consolidated Lamar's statutory appeal and mandamus action.

4. In a mandamus action, this Court's scope of review is to determine whether the trial court

permit application has been deemed approved under two separate statutes and, therefore, it is entitled to a writ of mandamus.

A writ of mandamus is an extraordinary remedy that compels an official's performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff and a corresponding duty in the defendant and where there is no other adequate remedy at law. *Chadwick v. Dauphin County Coroner,* 905 A.2d 600, 603 (Pa.Cmwlth.2006). Mandamus cannot be used to compel the performance of discretionary acts in a particular way. *Id.* at 604 (citing *Anderson v. Philadelphia,* 348 Pa. 583, 587, 36 A.2d 442, 444 (1944)). Lamar argues that its application was deemed approved by operation of statute making its right to the issuance of a permit clear. Thus, it contends that Monroeville can be compelled to issue the permit by writ of mandamus.

The first statute under which Lamar asserts its claim of a "deemed approval" is the Construction Code Act.[5] Section 502(a) of the Construction Code Act states, in relevant part, as follows:

(1) *Every application for a construction permit for* one-family and two-family dwelling units and utility and *miscellaneous use structures shall be granted or denied,* in whole or in part, *within 15 business days* of the filing date. . . . All other construction permits shall be granted or denied, in whole or in part, within 30 business days of the filing date. . . .

* * *

(3) *If the code administrator fails to act on an application for a construction permit* for one-family and two-family dwelling units and utility and *miscellaneous use structures within the time prescribed, the application shall be deemed approved.* The time limits established in this section for permit applications other than one-family and two-family dwellings may be extended upon agreement in writing between the applicant and the municipality for a specific number of additional days.

35 P.S. § 7210.502(a)(1), (3) (emphasis added). In short, under Section 502, an application for a permit to construct a house or a "miscellaneous use structure" must be acted upon in 15 days. All other construction permits must be acted upon in 30 days.

Lamar argues that its request for a sign permit is a request "for a construction permit for . . . a miscellaneous use structure" that was "deemed approved" when Monroeville failed to grant or deny the permit within 15 days. Section 502(a)(1) of the Construction Code Act, 35 P.S. § 7210.502(a)(1), (3). Monroeville argues that Lamar's billboard is not a "miscellaneous use structure." It argues that Lamar has applied for a "construction permit." As such, Monroeville had 30 days to act. Further, Monroeville argues that the Construction Code Act does not authorize a "deemed approval" of a construction permit. Because Lamar has no clear right to

abused its discretion or committed an error of law and whether sufficient evidence exists to support its findings. *South End Enterprises, Inc. v. City of York,* 913 A.2d 354, 357 n. 4 (Pa.Cmwlth.2006).

5. There remains an issue as to whether the Construction Code Act is applicable to billboards. The Construction Code Act applies to

"the construction, alteration, repair and occupancy of all buildings in" the Commonwealth. Section 104 of the Construction Code Act, 35 P.S. § 7210.104. Whether this covers billboards is an issue that the parties have not raised and will not be considered by the Court.

relief, Monroeville contends that Lamar is not entitled to a writ of mandamus. We agree.

A miscellaneous use structure is defined in Section 103 of the Construction Code Act as follows:

> Buildings or structures of an accessory character and miscellaneous structures not classified by the Building Officials and Code Administrators International, Inc., in any specific use group. *The term includes carports, detached private garages, greenhouses and sheds* having a building area less than 1,000 square feet. The term does not include swimming pools or spas.

35 P.S. § 7210.103 (emphasis added).[6] This definition, read in conjunction with Section 502 of the Construction Code Act, leaves little doubt that the "miscellaneous use structures" referenced in Section 502 are those that relate to residential dwellings. A billboard is not an accessory structure to a one-family and two-family dwelling unit, and Lamar's contention otherwise is rejected. Because Lamar did not submit an application relating to a "miscellaneous use structure," Monroeville was not required to act on it within 15 days.

We also agree with Monroeville that Section 502 of the Construction Code Act does not authorize a deemed approval

for permits relating to the construction of billboards. It provides this remedy only in the case of applications for the construction of residential buildings and not for other types of construction permits. The principle *expressio unius est exclusio alterius* teaches that the express mention of one meaning in a statute implies the exclusion of other meanings. *Commonwealth v. Ostrosky*, 589 Pa. 437, 446 n. 7, 909 A.2d 1224, 1229 n. 7 (2006). Here, because the deemed approval remedy was expressly given to applicants for residential construction projects but not to other applicants, the omission of applications for other construction projects was intentional. We hold that Lamar is not entitled to a "deemed approval" of its sign permit application under Section 502 of the Construction Code Act; there is no "deemed approval" provided for those permits applicable to billboards. Because Lamar's application has not been deemed approved, it does not have a clear right to a writ of mandamus.

Lamar argues, in the alternative, that it is entitled to deemed approval under Section 508 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508, which requires a municipality to review an application for a land development plan within 90 days.[7] The trial

---

**6.** Where specific words or examples follow general ones, the statutory construction doctrine *ejusdem generis*, "of the same kind or class," restricts application of the general term to things that are similar to those enumerated. *McClellan v. HMO*, 546 Pa. 463, 473, 686 A.2d 801, 806 (1996).

**7.** Section 508 of the MPC provides in pertinent part:

> All applications for approval of a plat ... whether preliminary or final, shall be acted upon by the governing body or the planning agency within such time limits as may be fixed in the subdivision and land develop-

ment ordinance but the governing body or *the planning agency shall render its decision and communicate it to the applicant not later than 90 days* following the date of the regular meeting of the governing body or the planning agency (whichever first reviews the application) next following the date the application is filed or after a final order of court remanding an application....

> \* \* \*

> (3) *Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an*

court found that Lamar's proposed modifications were alterations to a structure and, as a result, Lamar was obligated to obtain a zoning permit before seeking a construction permit. Lamar argues that from the trial court's finding, it necessarily follows that Lamar's proposed changes constituted a land development plan governed by Section 508 of the MPC. Therefore, according to Lamar, because Monroeville failed to render a decision on its application within 90 days, the application is deemed approved by reason of Section 508 of the MPC. However, the certified record shows that Lamar did not raise this argument before the trial court.[8] Accordingly, it will not be considered by this Court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Lamar has no clear right to relief under Section 502 of the Construction Code Act or Section 508 of the MPC. Accordingly,

Lamar is not entitled to the extraordinary remedy of mandamus. We will, therefore, affirm the trial court.

### Lamar's Appeal of the ZHB Decision

 Lamar contends that the trial court erred in affirming the ZHB's conclusion that the installations of LED screens constituted alterations of a billboard structure rather than a sign face change and, thus, were subject to the conditional use and site plan approval requirements of the Zoning Ordinance.[9] Lamar argues that it has a right to modernize the seventeen billboards with the LED displays and that, in any case, a change in sign face is not a structural change. For the reasons that follow, we will affirm the trial court.

We consider, first, Lamar's position that the seventeen billboards at issue are lawful nonconforming structures as defined by Section 107 of the MPC,[10] giving Lamar

---

> approval of the application in terms as presented unless the applicant has agreed in writing to an extension of time or change in the prescribed manner of presentation of communication of the decision, in which case, failure to meet the extended time or change in manner of presentation of communication shall have like effect.
>
> 53 P.S. § 10508 (emphasis added).

**8.** Moreover, we note that the Pennsylvania Supreme Court recently held in *Upper Southampton Township v. Upper Southampton Township Zoning Hearing Board,* —— Pa. ——, 934 A.2d 1162 (2007), that billboards do not fall within the MPC definition of land development. Therefore, even if Lamar had properly raised and preserved the issue, the deemed approval under Section 508 of the MPC would not be applicable to Lamar's application.

**9.** When no additional evidence is taken following the determination of a zoning hearing board, an appellate court's scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion in rendering its decision. *Noah's Ark Christian Child Care*

*Center, Inc. v. Zoning Hearing Board,* 584 Pa. 9, 880 A.2d 596 (2005) (citations omitted). An abuse of discretion will be found only where the zoning hearing board's findings are not supported by substantial evidence. *Larsen v. Zoning Bd. of Adjustment,* 543 Pa. 415, 421, 672 A.2d 286, 289 (1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

**10.** Section 107 of the MPC provides in relevant part that a nonconforming structure is

> a structure or part of a structure manifestly not designed to comply with the applicable use or extent of use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such structure lawfully existed prior to the enactment of such ordinance or amendment or prior to the application of such ordinance or amendment to its location by reason of annexation. Such nonconforming structures include, but are not limited to, nonconforming signs.
>
> 53 P.S. § 10107.

the right to modernize them with LED displays. In response, the ZHB contends that Lamar never established that the billboards in question were lawful nonconforming uses. However, even if they were nonconforming billboards, Lamar did not file the proper application for modernizing them, as required in the Zoning Ordinance.

■■■■ The natural expansion doctrine provides that

a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted.

*Nettleton v. Zoning Board of Adjustment of the City of Pittsburgh*, 574 Pa. 45, 51 n. 3, 828 A.2d 1033, 1037 n. 3 (2003) (quotation omitted).[11] However, "[t]hese protections are applicable only to *nonconforming uses* ... [and] [n]onconforming structures

... have no protected right to expand in violation of the applicable regulations." *Id.* (emphasis added). The first question, then, is whether the billboards in question were in fact lawful nonconforming uses.

■■■■ It is well settled that it is "the burden of the party proposing the existence of [a] nonconforming use to establish both its existence and legality before the enactment of the ordinance at issue." *Hager v. West Rockhill Township Zoning Hearing Board*, 795 A.2d 1104, 1110 (Pa. Cmwlth.2002). Lamar asserts the hearing before the ZHB established that the billboards were lawful nonconforming uses.[12] We disagree. Counsel for Lamar may have so described the billboards, but there is no evidence in the record that could support a finding that the billboards were in existence prior to the enactment of the Zoning Ordinance.[13] Indeed, the ZHB stated:

Although Lamar asserted to the Zoning Board at the public hearing that the Existing Billboards are legal non-conforming structures/uses and entitled to

---

**11.** "The rationale of the doctrine has its origins in the due process requirements protecting private property; if a person owns property which constitutes an existing, legal, nonconforming use, it is inequitable to prevent him from expanding the property as the dictates of business or modernization require." *Arter v. Philadelphia Zoning Board of Adjustment*, 916 A.2d 1222, 1230 (Pa.Cmwlth.2007) (internal quotation omitted).

**12.** Lamar further argues that this Court has already judicially determined in the unreported opinion *Lamar West, L.P. v. Monroeville Zoning Hearing Board*, (Pa.Cmwlth., No. 122 C.D.2005, filed May 3, 2005), that one of the billboards at issue here was a legal nonconforming *structure and use* and, therefore, Lamar contends that each of the seventeen billboards at issue should also be legal nonconforming structures. Lamar's reliance on *Lamar West* is misplaced and a mischaracterization of this Court's opinion. First, despite Lamar's assertion, it is not clear whether the

billboard at issue in *Lamar West* was in fact one of the seventeen billboards at issue here. Second, the issue before the Court in *Lamar West* was whether Lamar's proposed removal of a billboard to erect a modern billboard constituted a voluntary relinquishment and abandonment of Lamar's right to continue to use a nonconforming structure. Finally, and more importantly, this Court held in *Lamar West* that the billboard at issue was in fact a "conforming use" and, therefore, Lamar was not entitled to change the billboard under the theory of modernization of legal nonconforming uses. *See* Reproduced Record at 631a (R.R. ——).

**13.** In fact, Section 301.1 of the Ordinance requires that a "Zoning Certificate must be obtained by the owner of any non-conforming use as evidence that the use lawfully existed prior to the adoption of the provision which made the use non-conforming." ZONING ORDINANCE Section 301.1, R.R. 361a. No such evidence was introduced in this case.

certain legal protections, *Lamar presented no evidence to the Zoning Board to support this assertion,* nor did Lamar present any site specific evidence with respect to the Existing Billboards.

ZHB Decision, dated May 3, 2006, Conclusion of Law No. 5 (emphasis added). We cannot, therefore, accept Lamar's premise that the seventeen billboards are lawful nonconforming uses.

■■ Even assuming, *arguendo,* that the billboards are nonconforming uses, Lamar failed to file the application necessary where a landowner seeks to modernize or expand a nonconforming use. Section 301.2 of the Zoning Ordinance provides:

A non-conforming use may be continued; however it shall not be extended, expanded, or changed unless to a conforming use, *except when permitted as a special exception* by the Zoning Hearing Board in accordance with the following.

ZONING ORDINANCE Section 301.2, R.R. 361a (emphasis added). Section 302 of the Zoning Ordinance further provides:

A non-conforming structure used or occupied by a permitted use may be enlarged or *expanded when permitted as a variance* by the Zoning Hearing Board if the expansion ... otherwise conforms to all requirements of this Ordinance.

ZONING ORDINANCE Section 302, R.R. 361a (emphasis added). Lamar was required to seek a special exception to change the billboards, even under its lawful nonconforming use theory, and it did not. Lamar lacks any basis to advance its claim to a modernization or expansion of its billboards as a matter of right.

■■ Lamar next argues that the trial court erred in affirming the ZHB's conclusion that Lamar had to obtain a conditional use permit along with a site plan approval for the proposed changes to the billboards. Lamar argues that the alteration or change of the display area of a billboard is a "sign face" that is separate and distinct from a sign or structure and, thus, not subject to the Zoning Ordinance's requirements governing alterations to "structures." We disagree.

Section 106 of the Zoning Ordinance provides:

No *structure shall be* located, erected, *constructed,* reconstructed, moved, *altered, converted,* or enlarged, nor shall any *structure* or land be altered or used, *except* in full compliance with all the provisions of this Ordinance and *after the lawful issuance of all permits* and certificates required by this Ordinance.

ZONING ORDINANCE Section 106, R.R. 348a (emphasis added). Therefore, any person wishing to construct, alter, or convert any structure must comply with *all* the provisions of the Zoning Ordinance.

Under Section 502 of the Zoning Ordinance, a zoning permit must be obtained before any person may "[c]onstruct, reconstruct, move, alter, or enlarge any *structure* or building." ZONING ORDINANCE Section 502.2, R.R. 399a (emphasis added). Section 306 further provides that no zoning permit will be issued without a site plan approval, with the exception of "existing structures where the occupancy is being changed without any change in use category or *new construction or addition to structures.*" ZONING ORDINANCE Section 306, R.R. 363a (emphasis added). Thus, anyone wishing to alter or change any *structure* must obtain a zoning permit with a site approval.

A "structure" is defined as follows:

Any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land including in addition to buildings, *billboards,* carports, porches, and other

building features, but not including sidewalks, drives, fences and patios. ZONING ORDINANCE Section 601, R.R. 422a (emphasis added). Plainly, Lamar's billboards are "structures" under the Zoning Ordinance. However, Lamar argues that the LED display is not a sign but rather a "sign face," which Lamar contends is separate and distinct from a billboard. A "sign face" is defined as follows:

The entire area on which graphic or written material or information is placed for viewing in a single direction.

ZONING ORDINANCE Section 601, R.R. 421a. A "sign face" is simply that part of the billboard, *i.e.* the structure, where the graphics and written material are placed. It is still part of the structure. The evidence showed that the change from conventional signage to LED screens required significant structural alterations to the billboard structure; as such, they required a zoning permit under Section 502 of the Zoning Ordinance.

 Finally, Lamar argues that the ZHB erred in concluding that Lamar's conversion to the new LED screens had to comply with the conditional use requirement of Section 307.14 of the Zoning Ordinance. Lamar contends that the conditional use requirement of Section 307.14 applies only to the creation of new billboard structures rather than the replacement of advertising signs. Again, we disagree. Section 307.14 provides in relevant part as follows:

Billboards and/or outdoor advertising signs may be permitted as a conditional use when approved by Council, after submission and review by the Planning Commission; and provided all of the following requirements are met. . . .

ZONING ORDINANCE Section 307.14, R.R. 373a. "Billboards" are permitted as a conditional use, and there is nothing in the language of Section 307.14 to suggest it targets only "new" billboards, as Lamar suggests.

In sum, the trial court correctly affirmed the ZHB. The proposed change to Lamar's billboards from a conventional signage to an LED type signage constitutes an alteration of a structure, which requires a zoning permit along with a site plan and conditional use approval in accordance with the Zoning Ordinance.

### Conclusion

Lamar is not entitled to a writ of mandamus, and its appeal of the ZHB decision was properly denied. Accordingly, we affirm the trial court.

### *ORDER*

AND NOW, this 17th day of December, 2007, the order of the Court of Common Pleas of Allegheny County dated May 14, 2007, in the above captioned matter is hereby AFFIRMED.