**[J-79-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| LAMAR ADVANTAGE GP COMPANY, LLC, | : | No. 5 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | August 29, 2019 at No. 253 CD |
| v. | : | 2018, affirming the Order of the |
| | : | Court of Common Pleas of |
| | : | Allegheny County entered January |
| CITY OF PITTSBURGH ZONING BOARD | : | 24, 2018 at No. SA 17-000201. |
| OF ADJUSTMENT AND CITY OF | : | |
| PITTSBURGH, | : | ARGUED:  September 17, 2020 |
| | : | |
| Appellants | : | |

**OPINION**

**JUSTICE WECHT**                                      **DECIDED:  JANUARY 20, 2021**

For many years, Lamar Advantage GP Co. displayed an electronic advertisement on a billboard perched atop Mount Washington, which overlooks downtown Pittsburgh. In 2016, Lamar ratcheted a static, vinyl sign over the electronic advertisement and the underlying structure.  Believing that this action "enlarged" or "replaced" the sign, the City of Pittsburgh cited Lamar for breaching the City's Zoning Code.  Specifically, the City cited Lamar for violating Section 921.03.F.2 of that Code.  This provision bars a nonconforming sign from enlarging, adding to, or replacing another nonconforming sign.  Pittsburgh's Zoning Board of Adjustment upheld the citation, agreeing with the City that Lamar's actions enlarged or replaced the sign.  On appeal, the Court of Common Pleas reversed the Board.  The Commonwealth Court affirmed the lower court.  Both courts held that the Board's conclusion was unsupported by the record.

We agree. The record here does not support the Board's legal conclusion that, by draping the vinyl static sign over the existing electronic sign and sign structure, Lamar violated Code Section 921.03.F.2. We further conclude that the Commonwealth Court's decision in this case is not inconsistent with that court's earlier decision in *Lamar Advertising Co. v. Zoning Hearing Bd. of Monroeville*, 939 A.2d 994 (Pa. Cmwlth. 2007), which held that structural alterations required to replace seventeen static vinyl signs with electronic signs "altered" those signs within the meaning of a municipal ordinance. Accordingly, we affirm the order of the Commonwealth Court.

Before we delve further into the actions that preceded this litigation, we must review pertinent provisions of Pittsburgh's Zoning Code. (Please bear with us). The Code defines an "advertising sign" as:

> [A] sign that directs attention to a business, commodity, service, or entertainment, conducted, sold, or offered: (a) Only elsewhere than upon the premises where the sign is displayed; or (b) As a minor and incidental activity upon the premises where the sign is displayed.

PITTSBURGH, PA., ZONING CODE § 919.01.C.2. An "electronic sign" is defined as "any sign, video display, projected image, or similar device or portions thereof with text, images, or graphics generated by solid state electronic components." *Id.* § 919.01.C.5. A "nonconforming sign" is any "sign, lawfully existing on the effective date [of the Code] that does not completely conform to the sign regulations applicable in the district in which it is located." *Id.* § 919.01.C.15.

Turning to the different parts of a sign, the Code defines the "area of the sign" as follows:

> [T]he entire area within a single continuous perimeter enclosing the extreme limits of writing, representation, emblem or any figure or similar character together with any frame or other material or color forming an integral part of the display or used to differentiate such sign from the background against which it is placed (excluding the necessary supports or uprights on which

such sign is placed or apron designed to cover such uprights or work board installed to provide a safe area for servicing such sign).

*Id.* § 919.01.C.16. The "face" of the sign is "the side or sides of a sign on which the lettered, pictorial or sculptured matter designed to convey information is to be placed." *Id.* § 919.01.C.19.

Section 919.02.N.6 provides that "[a]n electronic advertising sign shall not replace an advertising sign, and an advertising sign shall not replace an electronic advertising sign, unless the replacement sign meets all of the requirements of Sec. 919 for a new sign." *Id.* § 919.02.N.6. Section 921.03.F subjects nonconforming signs to the Code's nonconforming structure regulations, subject to certain modifications. One such modification appears in Section 921.03.F.2, which provides that "[n]onconforming signs may not be enlarged, added to or replaced by another nonconforming sign or by a nonconforming use or structure, except that the substitution or interchange of poster panels and painted boards on nonconforming signs shall be permitted." *Id.* § 921.03.F.2.

With this arcane but necessary lexicon in hand, we turn to the facts of this case. Lamar owns a parcel of property on Grandview Avenue in the Mount Washington section of Pittsburgh, overlooking the Golden Triangle (as the City's downtown is known). The property contains two legal, nonconforming billboards, only one of which is the subject of this litigation. The billboard at issue here is a flat-faced concrete billboard that was erected in the mid-1920s. The billboard consists of a concrete structure measuring thirty-two by twenty-five feet, or 7,200 square feet ("SF"). Until May 2016, the sign face included an electronic advertising sign measuring 4,500 SF. The electronic components attached directly to the concrete sign structure. From 1933 to May 2016, Lamar used the 7,200 SF sign structure to support the 4,500 SF electronic sign.

On March 15, 1928, the Board confirmed the billboard's legal use as an advertising sign.[1]  On October 19, 1933, the Board confirmed the billboard's legal nonconforming use as an "electric advertising sign."[2]  On June 17, 1985, the City issued a Certificate of Occupancy for the billboard, again confirming the legality of the nonconforming use.[3]  The occupancy permit describes the billboard as measuring 7,200 SF.  The City has continuously accepted Lamar's payment of the sign permit fee and has continuously issued a sign permit for the Mount Washington billboard.

For many years leading up to this litigation, the 4,500 SF electronic sign displayed the logo of Bayer Corporation, the time of day, and advertising content for Bayer.  In daylight, however, the electronic sign was not used.  Instead, the billboard displayed "Pittsburgh" *via* signage that appeared underneath the electronic components.  Bayer's use of the billboard ended in 2014.  Lamar proceeded thereafter to use the billboard for display of public service announcements.

In June 2014, Lamar sought approval from Pittsburgh's Department of City Planning to renovate the Mount Washington billboard.  The proposed renovations included replacing the electronics and repairing the sign structure, which had deteriorated over the years.  As part of its approval process, the City sought payment of an application fee from Lamar of $10.00 per square foot of the sign face.  When calculating this fee, the City determined that the billboard was 7,200 SF, and accordingly sought payment of

---

[1]     *See* Ex. 31 to the Board's and City's Supplemental Return in the trial court; Reproduced Record ("R.R.") 293a (a 1928 decision of the Board on appeal from a decision of the Bureau of Building Inspection).  [Note to Reader: "Return" appears to be the term used for exhibit submissions in proceedings before the Board].

[2]     *See* Ex. 20 to the Board's and City's Return in the trial court; R.R. 168a-169a (a 1933 decision of the Board on appeal from a decision of the Bureau of Building Inspection).

[3]     *See* Ex. 19 to the Board's and City's Return in the trial court; R.R. 167a (Certificate of Occupancy).

$72,000.  The City also sought additional information from Lamar.  Lamar paid the application fee and submitted the requested information.  In November 2014, the City sought additional information, which Lamar provided.  Although Lamar believed that its application was complete, the City did not.  The City took no further action on the application.

Speaking publicly about the billboard and Lamar's application, Pittsburgh's Mayor and other City officials reportedly stated that Lamar's application would not be approved unless the City also approved the content of the message that would be displayed on the billboard.[4]

In May 2016, Lamar pressed on nonetheless.  Without approval, it installed a static, vinyl advertisement over the entire 7,200 SF sign structure, ratcheting the vinyl to the concrete and covering the existing electronic sign.  The vinyl sign was a black and gold advertisement for Sprint, a telecommunications company.  Pittsburgh's Assistant Director for Permits, Licenses, and Inspections ("PLI") directed its senior building inspector to inspect the installation.  Based upon that inspection, Pittsburgh officials determined that the billboard violated the Zoning Code.

On June 13, 2016, PLI issued a notice of violation to Lamar, informing Lamar that its installation of the vinyl sign violated two provisions of the Zoning Code:  Section 921.03.F.2 (barring the enlargement of, addition to, or replacement of a nonconforming sign without approval) and Section 919.01.J (requiring the removal of an advertising sign when a business has been terminated).  Each alleged violation arose from Lamar's use of the vinyl static sign over the 7,200 SF sign structure.

---

[4]  *See* Ex. 30 to the Board's and City's Return in the trial court; R.R. 289a-290a (an article from Pittsburgh Local CBS/KDKA, May 22, 2015, quoting the City's Mayor stating "[w]hat they were trying to do was to go to Giant Eagle and tell them that they could advertise for chipped ham and the [billboard] would say what the specials are with Klondikes and milk and that was never going to happen in this city.").

Lamar filed a protest appeal. On November 1, 2016, the Board conducted a hearing. Testimony from City employees established that the static vinyl sign did not change the size of the sign structure, but rather increased the size of the advertising content from the 4,500 SF that had been used for the electronic sign to the entire 7,200 SF area of the sign structure.

Following the hearing, the Board held that Lamar had installed the static vinyl sign without approval, in violation of the Zoning Code. In so holding, the Board reasoned that the 7,200 SF sign structure had never been used for advertising. Rather, only the 4,500 SF electronic sign had been used. When Lamar covered the entire 7,200 SF sign structure, it replaced the 4,500 SF electronic sign with the 7,200 SF vinyl sign. The Board held that this enlarged the area of the sign, in violation of Section 921.03.F.2.

The Board further held that Lamar violated Section 919.01.J by failing to remove the electronic Bayer signage after its business relationship with Bayer ended. In reaching its decision, the Board also opined that Lamar's conduct violated Sections 919.02.N.2[5] and 919.02.N.6,[6] although PLI had not cited Lamar for violating these two sections. Finally, the Board concluded, *sua sponte,* that Lamar had abandoned the prior nonconforming use of the sign structure under Section 921.02.B.2 by changing the sign from electronic to vinyl, and that this abandonment meant that the prior nonconforming use could not continue.

---

[5] Section 919.02.N.2 prohibits "structural alteration, enlargement, or extension" of a nonconforming sign unless "the alteration is required by law or will eliminate the nonconforming condition." PITTSBURGH, PA., ZONING CODE § 919.02.N.2.

[6] Section 919.02.N.6 prohibits replacing an advertising sign with an electronic advertising sign and vice versa "unless the replacement sign meets all of the requirements of Sec. 919 for a new sign." PITTSBURGH, PA., ZONING CODE § 919.02.N.6.

Lamar appealed to the Court of Common Pleas, which reversed the Board. The court recognized that, because it took no additional evidence, it was required to consider whether the Board committed an error of law, abused its discretion, or made findings that were not supported by the record.[7] The court concluded that the Board exceeded its jurisdiction by venturing beyond the two provisions under which PLI had cited Lamar. The court also agreed with Lamar that it did not need a permit to change the Mount Washington billboard from an electronic sign to a vinyl sign under Section 921.03.F.2. In this respect, the court found no indication that Lamar enlarged, added to, or replaced the sign. Rather, the City's evidence before the Board demonstrated that the size of the sign structure had not changed with the installation of the static vinyl sign, and that the vinyl sign only increased the size of the advertising content. According to the court, the Board's conclusion that Lamar impermissibly enlarged the area of the sign conflicted with the definition provided in Section 919.01.C.16 for "area of sign." The court did not discuss Section 919.01.J.

The City appealed to the Commonwealth Court, which proceeded to affirm the decision of the Court of Common Pleas. Waiving any challenge related to Section 919.01.J, the City confined its appeal to Section 921.03.F.2. The City argued that it correctly considered the measurements of the sign face as most recently used, or 4,500 SF, separately from the dimensions of the sign structure, or 7,200 SF. The Commonwealth Court rejected this argument, relying upon the Board's finding that the size of the advertising content increased but the size of the sign face or sign structure did not. Because Lamar had not increased the area of the sign, the Commonwealth Court held that Lamar did not violate Section 921.03.F.2.

---

[7] *See Mars Area Residents v. Zoning Hearing Bd.*, 529 A.2d 1198, 1199 (Pa. Cmwlth. 1987).

The City of Pittsburgh petitioned this Court, and on April 6, 2020, we granted review as to the following issue:

> Whether the holding of the panel in this matter that a static vinyl advertising sign could replace an electronic advertising sign was inconsistent with the holding in *Lamar Advertising Co. v. Zoning Hearing Bd. of the Municipality of Monroeville*, 939 A.2d 994 (Pa. Commw. Ct. 2007) that static vinyl advertising signs and electronic advertising signs are so different that one cannot simply replace the other without application for and issuance of a new zoning and building permit?

*Lamar Advantage GP Co., LLC v. City of Pittsburgh Zoning Bd. of Adjustment*, 228 A.3d 888 (Pa. 2020).

We take note first of two relevant parameters: (1) When the trial court takes no additional evidence in an appeal from the determination of a zoning hearing board, an appellate court's scope of review is limited to determining whether the zoning board committed an error of law or abused its discretion;[8] and (2) Whether a particular use falls within a category specified in a zoning ordinance is a question of law.[9] Accordingly, our review here is limited to determining whether the Board committed an error of law.

On this appeal, the City focuses upon the differences between an electronic sign and a vinyl sign, arguing that the lower courts failed to address the distinction between the two as described by the Commonwealth Court in *Lamar v. Monroeville*, 939 A.2d 994 (Pa. Cmwlth. 2007). In that case, Lamar sought to replace seventeen existing static vinyl signs with electronic LED signs. *Id.* at 997. The municipality of Monroeville informed Lamar that this change would require conditional use and site plan approval before a building permit would be considered under Monroeville's Zoning Ordinance. *Id.* at 998. Lamar appealed this determination to the Monroeville Zoning Hearing Board ("ZHB"),

---

[8]     Valley View Civic Ass'n v. Zoning Bd. of Adjustment, 462 A.2d 637, 639 (Pa. 1983).

[9]     Gorsline v. Bd. of Supervisors of Fairfield, 186 A.3d 375, 385 (Pa. 2018).

arguing that, because the LED screen would replace the vinyl advertising copy, it was a modernization to a lawful nonconforming use. *Id.* Lamar further argued that, because the proposed changes were not structural, they were not subject to Monroeville's Zoning Ordinance. *Id.* The ZHB rejected these arguments, finding that Lamar failed to present any evidence to substantiate its assertion that the billboards were lawful, nonconforming uses. *Id.* The ZHB further concluded that the proposed alterations were not limited to the sign face, but would also change the billboards' structures. *Id.* Because Lamar failed to establish the billboards' nonconforming use, its proposed changes required conditional use and site plan approval under the Monroeville Zoning Ordinance. *Id.* Lamar sought review in the Court of Common Pleas, which proceeded to affirm the Board.

On appeal to the Commonwealth Court, Lamar argued that the seventeen billboards were lawful, nonconforming structures as defined in the Municipalities Planning Code, 53 P.S. § 10107. As such, Lamar asserted, it had a right to modernize its existing billboards, and changing the sign face did not constitute a structural change that required site plan or conditional use approval. 939 A.2d at 1001.

The Commonwealth Court disagreed, rejecting Lamar's assertion that the billboards were legal, nonconforming uses. *Id.* at 1002-03. Because it was Lamar's burden to establish the legal, nonconforming use before the ZHB, and because Lamar failed to produce any evidence to substantiate this assertion, the Commonwealth Court found no record support for Lamar's argument. *Id.* Therefore, the Commonwealth Court found, Lamar had no right to modernize its billboards. *Id.* at 1003.

The Commonwealth Court turned to whether Lamar's proposed changes constituted a change in structure, inasmuch as Monroeville's Zoning Ordinance required

permits to enact certain changes in a structure.[10]  The Commonwealth Court held that changing billboards from conventional signs to LED signs involved significant structural alterations to the billboard structure and thus required a zoning permit.  *Id.* at 1004.

Relying upon *Lamar v. Monroeville*, the City argues here that a static vinyl sign is so different from an electronic sign that the one cannot ever replace the other without prior approval under applicable zoning requirements.  Premised upon this interpretation of *Lamar v. Monroeville*, the City argues that the Board correctly determined that the vinyl sign was distinct from the electronic sign and required new approval and permits.  In this respect, the City relies upon the credited testimony of the City's Zoning Administrator that the support structure is not part of the electronic sign face.  According to the City, ratcheting the vinyl sign over the electronic sign drastically altered the manner in which the support structure was used.

Lamar disagrees with the City's assertion that *Lamar v. Monroeville* conflicts with the Commonwealth Court's holding in this case, maintaining instead that the earlier case is not controlling.  Lamar emphasizes that there was a dispute in *Lamar v. Monroeville* about whether the seventeen billboards were legal nonconforming uses, whereas, in this case, the parties agree that the Mount Washington billboard is a legal nonconforming use and structure.

Lamar observes that the renovations it proposed in *Lamar v. Monroeville* necessitated structural alterations to seventeen billboards, whereas its placement of the vinyl sign over the sign structure of the Mount Washington billboard did not require any structural alterations.  Finally, responding to the City's argument under Section

---

[10]  Monroeville Zoning Ordinance Section 106 provided that "[n]o structure shall be located, erected, constructed, reconstructed, moved, altered, converted, or enlarged, nor shall any structure or land be altered or used, except in full compliance with all the provisions of this Ordinance and after the lawful issuance of all permits and certificates required by this Ordinance."  *Lamar v. Monroeville*, 939 A.2d at 1003.

921.03.F.2, Lamar argues that its placement of the vinyl sign on the Mount Washington billboard complies with this provision, which is the only regulation under which Lamar was cited that remains relevant at this point in the litigation.

Before addressing the issue before us, we must observe that the only citations that the City issued to Lamar were for violating Sections 921.03.F.2 and 919.01.J. The Board *sua sponte* chose nonetheless to speculate that Lamar also had violated Sections 919.02.N.2 and 919.02.N.6 and, additionally, that Lamar had abandoned the billboard under Section 919.02.B.2. Although these latter provisions may have been relevant to the Board's interpretation of Section 921.03.F.2, the Board's *sua sponte* findings of such violations were beyond the Board's jurisdiction and are not part of this appeal.[11] The Board's role in this case was solely to interpret the provisions of the Zoning Code that formed the basis of the citations that the City had issued.

Of the two provisions referenced in the City's citations, only Section 921.03.F.2 remains part of the case.[12] This section provides that nonconforming signs may not be enlarged, added to, or replaced by another nonconforming sign, use, or structure (except for an exception inapplicable here).[13] The sole issue that the City chose to raise in this Court is whether, under *Lamar v. Monroeville*, a static vinyl advertising sign could replace an electronic advertising sign.

---

[11]    *See* PITTSBURGH, PA., ZONING CODE § 923.02.B.1 (vesting the Board with the power "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement, decision or determination made by the Zoning Administrator . . . and, upon appeal, to interpret any provision of this Code where its meaning or application is in question.").

[12]    As noted, the City did not raise any issues related to Section 919.01.J on appeal.

[13]    An exception exists for "the substitution or interchange of poster panels and painted boards on nonconforming signs." Section 921.03.F.2. This exception is not implicated in this case.

There are legal and factual distinctions that limit *Lamar v. Monroeville*'s applicability to this case. First, *Lamar v. Monroeville* involved a different zoning ordinance. Section 106 of the Monroeville Zoning Ordinance barred the alteration of any structure without prior acquisition of all necessary permits. *Lamar v. Monroeville*, 939 A.2d at 1003. The focus in *Lamar v. Monroeville* was, therefore, on the significance of the proposed structural alterations. In this case, the basis of the citation under 921.03.F.2 was that the vinyl sign "replaced" or "enlarged" the sign face.[14]

Second, the Commonwealth Court in *Lamar v. Monroeville* relied upon Lamar's failure to establish that the seventeen billboards were legal nonconforming uses. It was Lamar's burden there to establish the legal nonconforming use before Monroeville's Zoning Hearing Board, and Lamar presented no evidence to support its assertion. Lamar's failure in that regard undermined its ability to defend the alteration of the billboards in that case. By contrast, the parties here agree that the Mount Washington billboard is a legal nonconforming use and has existed as such for over ninety years. When the City issued an occupancy permit in 1985, it noted that the Mount Washington billboard was permitted as a "ground sign" measuring 7,200 SF. Since then, the City has continued to accept Lamar's annual permit fees and has issued a sign permit every year. As the Mount Washington billboard is a legal nonconforming use, Lamar has a right to continue that use.[15]

---

[14] *See* Zoning Board of Adjustment, Case No. 302 of 2016, 2/6/2017, ¶ 18; R.R. 31a (holding that "Lamar's installation of the 7,200 sf Vinyl Sign, a static advertising sign, as a replacement for the nonconforming, 4,500 sf electronic [s]ign, violated Code Section 921.03.F"); *id.* ¶ 19; R.R. 31a (holding that the vinyl sign enlarged the area used for the electronic sign).

[15] *See* PITTSBURGH, PA., ZONING CODE § 921.02 (providing that a "nonconforming use which has a valid Certificate of Occupancy and lawfully occupies a structure or vacant site on the date that it becomes nonconforming may be continued as long as it remains otherwise lawful. . . ").

Third, Lamar's proposed alterations in *Lamar v. Monroeville* were substantial. There, Monroeville's Zoning Ordinance provided that "no structure shall be located, erected, constructed, reconstructed, moved, altered, converted, or enlarged" except in compliance with all requirements of the Ordinance. *Lamar v. Monroeville*, 939 A.2d at 1003. Lamar proposed to remove the static sign structure from seventeen billboards and replace them with new sign structures containing LED displays. This renovation would include the installation of electric services and cables, as well as air conditioning units that would be bolted permanently to the billboards. *Id.* at 998. The extent of the renovations caused the Commonwealth Court to conclude that the structural alterations required conditional use and site plan approval.[16]

In this case, Lamar's display of the vinyl sign required no structural alterations to the Mount Washington billboard. The City's own witness testified before the Board that the static vinyl sign did not replace or enlarge the sign structure.[17] And Lamar's use of the vinyl sign did not change the use of the Mount Washington billboard. Rather, the vinyl sign was placed over the electronic sign, the components of which remain where they were. The decisive factor that drove *Lamar v. Monroeville*—the structural alterations—is absent here.

The conclusion in *Lamar v. Monroeville* that the change from conventional signage to LED signage required zoning permits was premised upon the pertinent language of Monroeville's Zoning Ordinance, Lamar's failure to establish the billboards as legal nonconforming uses, and the significant structural alterations that the change would

---

[16] *Id.* at 1004 ("The evidence showed that the change from conventional signage to LED screens required significant structural alterations to the billboard structure; as such, they required a zoning permit under Section 502 of the Zoning Ordinance.").

[17] Notes of Testimony, Zoning Board of Adjustment, 11/10/2016, at 23-25; R.R. 80a-82a.

entail. None of these circumstances are present in today's case. Because of these differences, *Lamar v. Monroeville* is distinguishable. We therefore answer the sole question before us in the negative: the Commonwealth Court's decision below is not inconsistent with *Lamar v. Monroeville.*

Having resolved the issue before us, our task is complete. We did not grant review over any other basis to sustain the City's citation under Section 921.03.F.2. Although the City seeks now to argue that the installation of the 7,200 SF static vinyl sign impermissibly enlarged the 4,500 SF sign face, this argument is beyond the scope of our allocatur grant.[18]

We conclude that *Lamar v. Monroeville* is not helpful in ascertaining whether Lamar violated Section 921.03.F.2. The holding there was driven by the significant structural alterations required for the proposed renovations, and by the meaning of those alterations under the Monroeville Zoning Ordinance. By contrast, Lamar's ratcheting of a vinyl static sign over an existing electronic sign here involved no structural alterations. Accordingly, *Lamar v. Monroeville* is not controlling. We affirm the order of the Commonwealth Court.

Justices Baer, Todd and Donohue join the opinion.

Chief Justice Saylor files a dissenting opinion in which Justices Dougherty and Mundy join.

---

[18] The Dissenting Opinion maintains that this Court should delve beyond the controlling effect of *Lamar v. Monroeville* in an effort to shed light upon the pertinent land-use regulations. *See* Dissenting Opinion at 1-2. While we do not disagree that the land-use regulations could benefit from judicial clarification, the sole issue that the City chose to raise in this Court is whether, under *Lamar v. Monroeville*, a static vinyl advertising sign could replace an electronic advertising sign. It is that question which we resolve today.