Perry Township,　　　　　　　　　　　:
　　　　　　　Appellant　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
David D. Osikowicz, an individual　　:
t/d/b/a Valier Coal Yard; and Original　:
Fuels, Inc., a corporation and t/d/b/a　:　No. 355 C.D. 2023
Grange Lime & Stone　　　　　　　:　Argued:  October 8, 2024


BEFORE:　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE COVEY　　　　　　　　　　　　　FILED:  October 31, 2024


Perry Township (Township) appeals from the Jefferson County Common Pleas Court's (trial court) February 22, 2023 order[1] directing the Township to enter into an Excess Maintenance Agreement[2] with David D. Osikowicz, an individual t/d/b/a Valier Coal Yard, and Original Fuels, Inc., a corporation t/d/b/a Grange Lime & Stone (collectively, Appellees), and permitting Appellees to use overweight vehicles on St. Jacob's Church Road (Road or T368), a public road under the Township's control.  The Township also appeals from the trial court's March 27, 2023 order denying its Post-Trial Motion.[3]  Essentially, the Township presents one

---

[1] The trial court dated the order February 21, 2023, but it was entered on the trial court's docket on February 22, 2023.

[2] The trial court also referred to the Excess Maintenance Agreement as a Road Bond.

[3] The proper procedure to perfect an appeal from the decision of a judge following a trial without a jury is to have judgment entered on the trial court's decision and appeal from that judgment, not to appeal from the trial court's order denying post-trial relief.  *See* Pennsylvania Rule of Civil Procedure 227.4, Pa.R.Civ.P. 227.4; *see also Your Towne Builders v. Manheim Twp.*,

issue for this Court's review: whether the trial court erred by ordering the Township to enter into the Excess Maintenance Agreement.[4]  After review, this Court reverses.

Appellees operate a commercial stone quarry located on the approximately 2.5-mile long Road.[5]  On November 5, 2001, the Township and Appellees entered into a Hauling Agreement, effective from November 5, 2001 to December 31, 2005.  Therein, the Township agreed to allow Appellees to operate vehicles having a gross weight in excess of 10 tons on the Road, and Appellees agreed to maintain the Road for public travel in cooperation with the Township, to supply the materials, equipment, and personnel to maintain the Road's then-current condition, and to return the Road to the Township in the same or better condition when the Hauling Agreement expired.

On September 30, 2016, the Township filed a complaint in the trial court asserting claims for breach of contract, unjust enrichment, and public nuisance, and seeking an injunction (Complaint) against Appellees, claiming that Appellees' vehicles caused damage to the Road and Appellees either refused to fix the damage or conducted only superficial repairs.  The Township attached a proposed Excess

303 A.3d 1126 (Pa. Cmwlth. 2023).  In the instant matter, on April 10, 2023, the Township filed a praecipe to enter judgment on the trial court's February 22, 2023 order and the trial court entered judgment thereon that day.  *See* Original Record Item 99.  Accordingly, the Township's appeal is from the trial court's February 22, 2023 order, not the trial court's March 27, 2023 order denying post-trial relief.

[4] In its Statement of Questions Involved, the Township presented two issues: (1) whether the trial court erred by ordering the Township to enter into the Excess Maintenance Agreement when, in Section 4902 of the Vehicle Code, 75 Pa.C.S. § 4902 (relating to highway use restrictions), the Pennsylvania legislature granted the Township discretion to determine whether to enter into an agreement with entities to operate overweight vehicles on the Township's roads; and (2) whether the trial court erred by ordering the Township to enter into the Excess Maintenance Agreement when a June 4, 2020 Settlement Agreement (Settlement Agreement) barred Appellees from using the Road if they breached the Settlement Agreement, which Appellees did.  *See* Township Br. at 5.  This Court combined those issues herein for ease of discussion.

[5] The Road terminates at its northern end at Porter Road and at its southern end at Hamilton Markton Road in the Township.  The quarry is located approximately 1.6 miles from Porter Road and approximately .8 miles from Hamilton Markton Road.

Maintenance Agreement to the Complaint as Exhibit G. The parties filed their respective responsive pleadings and undertook discovery, and the trial court scheduled trial for June 5, 2020. However, in May 2020, the parties participated in court-ordered mediation during which they resolved their disputes and, on June 4, 2020, they executed a mutually drafted Settlement Agreement.[6] *See* Reproduced Record (R.R.) at 1a-6a.

In the Settlement Agreement the parties agreed, *inter alia*, that Appellees would reconstruct the southern portion of the Road (Southern Portion)[7] to make it usable for vehicle traffic that exceeds the Road's posted weight limits within six months of the Settlement Agreement's effective date (i.e., December 4, 2020) and cease using the Road's northern portion (Northern Portion).[8] *See* R.R. at 1a. The Settlement Agreement further specified that, after completing the work on the Southern Portion, Appellees had to repair the paved part of the Northern Portion by August 31, 2021.[9] *See* R.R. at 2a. The Settlement Agreement included that each party was to retain a licensed engineer to assess and oversee those repairs.[10] *See* R.R. at 2a-3a. The parties declared in the Settlement Agreement that "[t]ime [wa]s of the essence[,]" "[Appellees] w[ould] have the benefit of [] force majure [sic] protections so as to extend the deadline should they be unable to complete th[e] work on time due to weather, plague[,] or other force majure [sic] incidents[,]" and the

---

[6] In Section 13 of the Settlement Agreement, the parties specified that they "jointly drafted [it]," it shall "be construed in the broadest possible manner in accordance with the [p]arties' express intention[s]," and courts "shall not use the role of the [p]arties in drafting this [Settlement] Agreement in the interpretation of it." R.R. at 3a.

[7] The Southern Portion of the Road extends from Appellees' quarry south to Hamilton Markton Road. *See* R.R. at 1a.

[8] The Northern Portion of the Road runs from Appellees' quarry north to Porter Road. *See* R.R. at 2a.

[9] Appellees were not required to repair the dirt part of the Northern Portion. *See* R.R. at 2a.

[10] According to the Settlement Agreement, the parties' engineers were to select a third engineer to resolve any disputes between them. *See* R.R. at 2a-3a.

3

engineers would determine whether force majeure circumstances tolled the Northern Portion repair deadlines. R.R. at 2a. If Appellees complied with the Settlement Agreement, the Township would release Appellees from liability and discontinue the 2016 litigation. *See* R.R. at 3a. If, however, Appellees failed to timely make the repairs, they immediately lost the right to operate vehicles in excess of the Township's applicable weight limit ordinances (i.e., overweight vehicles) on both the Northern and Southern Portions of the Road. *See id.* Finally, if Appellees failed to repair the Northern Portion in accordance with the engineers' decisions and directions, the Settlement Agreement authorized the Township to confess a judgment against Appellees for $300,000.00. *See id.*

The parties retained their respective engineers and Appellees timely completed the repairs on the Southern Portion of the Road and stopped using the Northern Portion, as required by the Settlement Agreement. On August 16, 2021, the Township filed a Petition to Enforce Settlement Agreement, therein asking the trial court to appoint a third engineer to resolve disputes between the parties' engineers and enforce the Settlement Agreement provision barring Appellees from using the Road entirely based on Appellees' failure to conduct repairs on the Northern Portion. On October 28, 2021, the trial court appointed Jeffrey A. Parobek, P.E. (Parobek) as the third engineer to resolve the parties' disputes and conduct an arbitration.

The parties presented arbitration position papers supported by their respective engineers. Appellees admitted that they did not timely repair the Northern Portion, but claimed their failure to do so was excused under the Settlement Agreement's force majeure clause because the COVID-19 pandemic prevented them from locating a contractor willing to do the work. The Township disagreed. Parobek conducted an arbitration hearing on May 11, 2022, during which the Township and Appellees presented evidence. On May 23, 2022, Parobek ruled in the Township's

4

favor, concluding that Appellees breached the Settlement Agreement by failing to timely repair the Northern Portion of the Road, and opining that "application of [f]orce [m]ajeure due to contractor staffing shortages related to COVID[-19] has not been adequately documented with the materials provided and is inappropriate." R.R. at 20a. Appellees did not seek to vacate the arbitration award.

On May 27, 2022, the Township filed a Motion to Confirm Arbitration Award in the trial court seeking an order confirming the arbitration award and barring Appellees from operating overweight vehicles on the Road. *See* R.R. at 8a-21a. On June 1, 2022, the trial court granted the Motion to Confirm Arbitration Award and barred Appellees from operating their overweight vehicles on the Road. *See* R.R. at 22a. Appellees did not challenge the trial court's order. The Township also filed a $300,000.00 confession of judgment against Appellees, which the trial court granted on June 21, 2022. *See* R.R. at 23a-26a.

In the meantime, during the spring and summer of 2022, the parties' engineers worked together to create a scope of work for the Northern Portion of the Road, construction commenced, and Appellees completed the work on October 19, 2022. That same day, the parties' engineers exchanged emails discussing a small area of the Northern Portion that had a small hump and minor graveling. *See* R.R. at 43a-46a. The parties' engineers created a plan to seal the area with asphalt sealer for the winter/spring and Appellees completed that correction. *See id.* However, on October 25, 2022, the Township's engineer notified Appellees' engineer that the Township's Board of Supervisors (Board) did not agree that asphalt sealer properly corrected the hump and graveling on the Road, and declared that milling, leveling, and overlay were necessary to resolve that issue. *See* R.R. at 47a.

On December 1, 2022, Appellees filed a Petition to Enforce Court Order and Request for Maintenance Agreement (Enforcement Petition), asserting that because the Road repairs were completed to the engineers' satisfaction, it was

5

improper for the Board to modify the engineers' agreed-upon resolution for the hump and graveling repair. *See* R.R. at 27a-58a. Appellees moved the trial court to enter an order declaring that the Road repairs had been completed and the Township must discontinue the 2016 litigation and directing the Township to execute an Excess Maintenance Agreement with Appellees at the Board's next meeting for Appellees to use the Southern Portion of the Road. On December 2, 2022, the trial court ordered the Township to file a response to the Enforcement Petition. *See* R.R. at 72a. On December 19, 2022, the Township filed a reply opposing the Enforcement Petition asserting that, in light of Appellees' breach of the Settlement Agreement and the agreed-upon penalties in the event of breach, Appellees had no right to demand, and the Township had no reason to agree to, an Excess Maintenance Agreement. *See* R.R. at 59a-71a.

The trial court conducted a hearing on January 27, 2023, at which the parties agreed that Appellees had completed the Road's repairs, and the Township agreed to have the trial court mark the $300,000.00 judgment against Appellees satisfied. However, the Township continued to take the position that, based on the Settlement Agreement and Section 4902 of the Vehicle Code, it was not required to enter into an Excess Maintenance Agreement and allow Appellees to operate overweight vehicles on the Road's Southern Portion. The parties agreed that the trial court should rule on the record without further evidence or testimony.[11]

By order entered on February 22, 2023, the trial court declared that the Road work had been completed "pursuant to the [Settlement A]greement" and directed the Township to file a praecipe to settle and discontinue the 2016 litigation with prejudice within five days. R.R. at 73a. The trial court further stated:

---

[11] The trial court referenced in its February 22, 2023 order that its decision was rendered "after [a]rgument on the facts agreed upon." R.R. at 73a; *see also* Township Br. at 10-11. Accordingly, there is no hearing transcript in the record before this Court.

> [A]lthough the [Board] exercised [its] right under [Section 4902 of the Vehicle Code] to deny an agreement, this [trial c]ourt finds that [Appellees], although, technically, having not performed the Settlement Agreement, dated June 1, 2020, in a timely manner, this [trial c]ourt does not believe that overall the delay in satisfying th[e] [Settlement A]greement is sufficient reason to deny an excess maintenance agreement (Road Bond) regarding [Appellees'] use of the [S]outhern [P]ortion of [the] Road. [The Township] shall, within the next [10] days, sign an Excess Maintenance Agreement to be executed at [its] next meeting in sufficient conformity with Exhibit G of the [Township's] Complaint. [*See* R.R. at 48a-57a.]

*Id.*

On March 3, 2023, the Township filed the Post-Trial Motion, therein reiterating its arguments in its reply opposing the Enforcement Petition and asking the trial court to modify the February 22, 2023 order accordingly. *See* Original Record (O.R.) Item 96. The trial court denied the Post-Trial Motion on March 27, 2023. On April 10, 2023, the Township filed a praecipe for the trial court to mark the confessed judgment satisfied, and the trial court marked the confessed judgment satisfied that same day. *See* R.R. at 75a-76a. Also on April 10, 2023, the Township filed a praecipe to enter judgment on the trial court's February 22, 2023 order, and the trial court entered judgment thereon that day. *See* O.R. Item 99. The Township appealed to this Court.[12]

---

[12] When reviewing a trial court's decision to enforce a settlement agreement, our review is plenary as to questions of law. The appellate court can draw its own inferences and reach its own conclusions from the record and the facts found by the trial court. However, we are bound by the trial court's findings which are supported by substantial evidence.

*Berkheimer Assocs. ex rel. N. Coventry Twp. v. Norco Motors*, 842 A.2d 966, 969 n.4 (Pa. Cmwlth. 2004). Challenges involving statutory interpretation are questions of law "subject to a de novo standard of review and a plenary scope of review." *Banfield v. Cortes*, 110 A.3d 155, 166 (Pa. 2015).

On April 14, 2023, the trial court directed the Township to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On April 26, 2023, the Township filed its Rule 1925(b) Statement. On June 13, 2023, the trial court issued its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion), wherein it found that Appellees had operated on the Road "for[] at least[] three decades to the satisfaction of the [Board]" and, although Appellees breached the Settlement Agreement, that "was because of extenuating circumstances, not of their own cause, and they ceased using the [R]oad until the following spring/summer, when they completed the paving to the specifications required under the [S]ettlement [A]greement." Rule 1925(a) Op. at 1-2 (R.R. at 82a-83a).

The Township argues that the trial court erred by ordering it to enter into the Excess Maintenance Agreement when, in Section 4902 of the Vehicle Code, the General Assembly granted the Township the discretion to do so, and there was no record evidence that the Township abused its discretion. The Township also contends that the trial court usurped the Township's authority and substituted its judgment based on facts not of record (i.e., that Appellees had operated on the Road for decades to the Board's satisfaction) and by allowing Appellees to cure their breach when, with the exception of satisfying the confessed judgment, the Settlement Agreement contained no cure provisions.

Appellees rejoin that the trial court correctly determined that a single breach of the Settlement Agreement, once cured, was insufficient to deny Appellees an Excess Maintenance Agreement to operate overweight vehicles on the Southern Portion of the Road. Moreover, Appellees assert that the Settlement Agreement does not reference Section 4902 of the Vehicle Code. Notwithstanding, Appellees argue that the Township overstates its discretionary authority where Section 4902 of the Vehicle Code must be read in context of the entire statute - such that the Township

8

may only deny a permit and agreement for violations of a road maintenance agreement (not settlement agreement), and the Township *must* enter into road maintenance agreements when, as in this case, there is no reasonable alternative route available to Appellees.

> Section 4901(a) of the Vehicle Code declares, in relevant part:

> No vehicle, combination[,] or load which has a size or weight exceeding the limitations provided in this [C]hapter [49, Size, Weight, and Load, 75 Pa.C.S. §§ 4901-4983 (Chapter 49),] . . . shall be operated or moved upon any highway of this Commonwealth [of Pennsylvania (Commonwealth)], **unless permitted** as provided in this title **by the** [D]epartment [of Transportation (DOT)] or **local authority**[13] with respect to highways and bridges under their respective jurisdictions.

75 Pa.C.S. § 4901(a) (emphasis added); *see also* Section 189.4(a) of DOT's Regulations, 67 Pa. Code § 189.4(a). Accordingly, local authorities may restrict or prohibit the operation of vehicles on roadways under their jurisdiction if the size and/or weight of the vehicles may damage or destroy those roads.[14] *See* Section 4902(a)(1) of the Vehicle Code, 75 Pa.C.S. § 4902(a)(1).

> Section 4902(c)(1) of the Vehicle Code also provides:

> The . . . **local authorities** **may** **issue permits** for movement of vehicles of size and weight in excess of restrictions promulgated under subsections (a) and (b)[15] with respect to highways and bridges under their

---

[13] Section 193.2 of DOT's Regulations defines *local authorities* as "[s]tate agencies other than [DOT], and county, municipal, and other boards or bodies having authority to enact restrictions relating to traffic[.]" 67 Pa. Code § 193.2.

[14] In this appeal, the parties do not dispute that the Township had excess weight vehicle ordinances in place.

[15] Section 4902(b) of the Vehicle Code adds that local authorities may restrict or prohibit the operation of vehicles on roadways under their jurisdiction if or when hazardous traffic conditions or other safety factors require such prohibitions or restrictions. *See* 75 Pa.C.S. § 4902(b).

9

jurisdiction **and <u>may</u> require such agreement** or security **as they deem necessary to cover the cost of repairs and restoration necessitated by the permitted movement of vehicles**.[16]  In reference to subsection (a), the . . . local authorities shall not refuse to issue a permit with respect to a highway under their jurisdiction if there is no reasonable alternate route available.  For purposes of this section, "reasonable alternate route" shall mean a route meeting the criteria set forth in [DOT's R]egulations relating to traffic and engineering studies.

75 Pa.C.S. § 4902(c)(1) (original emphasis omitted; bold and underline emphasis added).  Section 4902(j) of the Vehicle Code further specifies: "[**L**]**ocal authorities <u>may</u>** suspend, revoke[,] or **deny a permit and agreement if** it is determined by . . . a local authority that **there has been a violation of** this section [(i.e., Section 4902 of the Vehicle Code)], pertinent [R]egulation or **agreement**, notwithstanding any other provision of this section [(i.e., Section 4902 of the Vehicle Code]."  75 Pa.C.S. § 4902(j) (bold and underline emphasis added).

When interpreting Section 4902(b) of the Vehicle Code, this Court has concluded that the term *may* included therein affords the local authority discretion. *See Harasty v. Borough of W. Brownsville*, 412 A.2d 688 (Pa. Cmwlth. 1980).  Moreover,

[i]t is well[ ]settled that . . . courts cannot substitute judicial discretion for administrative discretion.  As explained by our Supreme Court:

First, it is to be presumed that municipal officers properly act for the public good.  Second, courts will not sit in review of municipal actions

---

[16] Section 189.4(c) of DOT's Regulations entitled "*Excess* [*M*]*aintenance* [*A*]*greement*," declares: "Issuance of a permit to exceed a posted weight limit or limits will be conditioned on the agreement by the permittee to accept financial responsibility for excess maintenance of the posted highway or portion thereof to be used by the permittee."  67 Pa. Code § 189.4(c).  Section 189.2 of DOT's Regulations defines e*xcess maintenance* as "[m]aintenance or restoration or both (but not betterment) of a posted highway in excess of normal maintenance, caused by use of over-posted-weight vehicles."  67 Pa. Code § 189.2.

> involving discretion[] in the absence of proof of fraud, collusion, bad faith[,] or arbitrary action equating an abuse of discretion. Third, on judicial review, courts, absent proof of fraud, collusion, bad faith[,] or abuse of power, do not inquire into the [w]isdom of municipal actions and [j]udicial discretion should not be substituted for [a]dministrative discretion.

*Weber v. City of Phila*[.], 262 A.2d 297, 299 ([Pa.] 1970) (citations omitted).

*Callowhill Neighborhood Ass'n v. City of Phila. Zoning Bd. of Adjustment*, 118 A.3d 1214, 1226 (Pa. Cmwlth. 2015).

Here, the Township had the discretion to grant or deny Appellees a permit and Excess Maintenance Agreement. In addition, there was no record evidence of "fraud, collusion, bad faith[,] or arbitrary action equating an abuse of discretion" by the Township in refusing to execute the Excess Maintenance Agreement. *Callowhill Neighborhood Ass'n*, 118 A.3d at 1226 (quoting *Weber*, 262 A.2d at 299). The Township's sole reason for denying the Excess Maintenance Agreement was Appellees' breach of the Settlement Agreement.

> In the Settlement Agreement, the parties mutually agreed:

> WHEREAS, on November 5, 2001, the [p]arties entered into . . . the []Hauling Agreement[], which provided, *inter alia*, that [Appellees] could use the Road for their business functions, in consideration of which [Appellees] would return the Road to the Township in as good or better condition as before the start dates of the Hauling Agreement;

> WHEREAS, subsequent to the execution of the Hauling Agreement, and continuing to the present time, [Appellees] used the Road;

> WHEREAS, a dispute arose between the [p]arties regarding whether [Appellees] were complying with the Hauling Agreement, resulting in the Township commencing litigation in the [trial court], and praying

11

therein that the [trial c]ourt award it, *inter alia*, a judgment in an amount necessary to fix the Road pursuant to the terms of the Hauling Agreement;

WHEREAS, to avoid the cost, inconvenience, uncertainty[,] and burden associated with continuing litigation, the Township and [Appellees] have agreed to compromise and settle the disputes raised in the [trial court] on the terms and conditions set forth herein.

R.R. at 1a. Thus, Appellees agreed, *inter alia*, to repair the Northern Portion of the Road to the standards explicitly set forth in the Settlement Agreement by August 31, 2021, *see* R.R. at 2a, that time was of the essence to do so, *see id.*, that the Township could confess judgment until Appellees completed the work on the Northern Portion, *see* R.R. at 3a, and that "**in the event that** [**Appellees**] **breach**[**ed**] **any duty set forth** [**t**]**herein**," Appellees "**immediately los**[**t**] **the right to operate on the Road** (both the Northern Portion and Southern Portion) **in violation of** [**the Township's**] **applicable weight ordinances**." *Id*. (bold and underline emphasis added). Notwithstanding the trial court's interpretation to the contrary, a single breach of the Settlement Agreement triggered such penalty.

The record supports that Appellees did not timely complete work on the Northern Portion, that a majority of the engineers concluded that Appellees had no excuse for failing to do so, and that Appellees did not seek to vacate the arbitration decision. In addition, with the exception of removal of the confessed judgment, *see* R.R. at 3a, the Settlement Agreement did not allow Appellees to cure their breach after the fact. Certainly, when attempting to resolve ongoing disputes over Appellees' past Road repairs with a Settlement Agreement, Appellees' breach of that Settlement Agreement's Road repair deadline was a reasonable basis on which the Township could exercise its discretion and refuse to enter into the Excess Maintenance Agreement with Appellees.

12

Section 4902(c)(1) of the Vehicle Code's mandate that "local authorities shall not refuse to issue a permit . . . if there is no reasonable alternate route available" does not alter this Court's conclusion. 75 Pa.C.S. § 4902(c)(1). First, the trial court did not make a finding that "there is no reasonable alternate route available" to Appellees in this case, and the record does not support such a finding. *Id.* While a hearing was scheduled to be held on January 27, 2023, Appellees declined to present evidence and asked the trial court to decide this matter based on the existing record. In their brief to this Court, *see* Appellees' Br. at 18, Appellees acknowledge that the existing record regarding the route to their business consists solely of Appellees' claims in their New Matter, Amended New Matter, and Second Amended New Matter that their "location can only be reasonably reached via the [Road]." O.R. Items 6 ¶ 45, 18 ¶ 45; *see also* O.R. Item 70 ¶ 62 (Appellees' "commercial establishment can only be reached via [the Road]."). However, not only did the Township deny those allegations in its replies, *see* O.R. Item 9 ¶ 45, 19 ¶ 45; *see also* O.R. Item 71 ¶ 62, but it points out that Appellees admitted there was an alternate route.[17] *See* O.R. Items 6 ¶ 46, 18 ¶ 46. Appellees also direct this Court's attention to Complaint Exhibit A, an Indiana County map showing the Road/T368 (Map). *See* O.R. Item 1, Ex. A. Importantly, the Map does not appear to have been authenticated, it does not depict the location of Appellees' quarry, and it shows at least one roadway intersecting the Road (T366).[18]

---

[17] This Court observes Appellees' claim in their New Matter and Amended New Matter: "The only alternative route to [Appellees'] location is via a route that intersects with a dangerous intersection, making use of this alternative route an unreasonable and dangerous alternative." O.R. Item 6 ¶ 46, 18 ¶ 46. However, the Township denied those allegations on the bases that it lacked knowledge sufficient to admit them, and Appellees did not define *dangerous intersection*. *See* O.R. Item 9 ¶ 46, 19 ¶ 46; O.R. Item 71 ¶ 62 (Appellees "have admitted that there exists an alternative route of access by which individuals can access [their] industrial mining facility without using the Road.").

[18] In their brief before this Court, Appellees state:

13

Second, Section 4902(j) of the Vehicle Code clearly states that, "**notwithstanding any other provision of** [**Section 4902 of the Vehicle Code**,]" the Township "**may** . . . **deny a permit and agreement if** . . . **there has been a violation of** [Section 4902 of the Vehicle Code], pertinent [R]egulation or **agreement**[.]" 75 Pa.C.S. § 4902(j) (emphasis added). Therefore, regardless of whether Appellees have a reasonable alternate route to their quarry, the Township could deny Appellees a permit and Excess Maintenance Agreement if Appellees violated an *agreement*.

The Vehicle Code does not define the term *agreement* as it is used in Section 4902(j). The Township interprets it in this context to mean *any* agreement (including the Settlement Agreement), while Appellees interpret it to refer only to an *excess maintenance agreement*. When, as here, a word in a statute is subject to at least two reasonable interpretations, it is ambiguous, *see JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187 (Pa. 2019), and this Court looks to the Statutory

---

> There is one road that intersects T368 on the [M]ap, identified as T366. T366 is known locally as Rugh's Back Road, and it is located approximately seven tenths of a mile north of the quarry. There are no other [T]ownship roads near the quarry's location, and no "reasonable alternate route[,]"[] as defined by Section 4902 [of the Vehicle Code], to or from the quarry.

Appellees' Br. at 17-18. Appellees further declare: "A Google Maps search for 'St. Jacob's Church Road' reveals no statutorily[-]defined reasonable alternative route to or from the quarry." *Id*. at 18. Because such information was not in the trial court's original record, this Court may not consider it. *See* Pennsylvania Rule of Appellate Procedure 1921, Note (this Court's review is limited to the facts in the record certified on appeal).

Appellees add: "A view was conducted of the Road in February 2017, whereby the [trial c]ourt judge was therefore able to personally travel the Road and see the location of the quarry." Appellees' Br. at 18. Notably, notwithstanding that the same trial court judge who issued the February 22 and March 27, 2023 orders and the Rule 1925(a) Opinion viewed the Road in 2017, *see* O.R. Item 14, he made no factual finding that Appellees had no reasonable alternate route.

Construction Act of 1972 (SCA)[19] to ascertain and effectuate the General Assembly's intent. *See* Section 1921(a) of the SCA, 1 Pa.C.S. § 1921(a).

Generally, Section 1921(a) of the SCA specifies that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). In addition, Section 1921(c) of the SCA declares that the General Assembly's intent may be ascertained by considering, *inter alia*, "[t]he occasion and necessity for the statute[,]" "[t]he mischief to be remedied[,]" "[t]he object to be attained[,]" "[t]he consequences of a particular interpretation[,]" and "administrative interpretations of such statute." 1 Pa.C.S. § 1921(c)(1),(3)-(4),(6),(8). Further, Section 1922 of the SCA includes presumptions applicable to statutory interpretations, *inter alia*, that "the General Assembly intends the entire statute to be effective and certain[,]" 1 Pa.C.S. § 1922(2), and "the General Assembly intends to favor the public interest as against any private interest." 1 Pa.C.S. § 1922(5).

Applying those SCA presumptions and considerations, this Court observes that the Pennsylvania Supreme Court has held: "The purpose of the overweight [vehicle] provision of the Vehicle Code is to protect the highways of the Commonwealth from damage and to insure the safety of those traveling upon the highways." *Commonwealth v. Smith*, 187 A.2d 267, 270 (Pa. 1963); *see also Commonwealth v. Hoffman*, 714 A.2d 443 (Pa. Super. 1998). In addition to maintaining safe roadways for the traveling public, the General Assembly clearly intends in Chapter 49 for companies whose vehicles could damage Commonwealth roadways - rather than citizens - to bear the cost to fix them. *See* 75 Pa.C.S. § 4902(c)(1) (local authorities "may require such agreement or security as they deem necessary to cover the cost of repairs and restoration"). Such interpretation also

---

[19] 1 Pa.C.S. §§ 1501-1991.

15

comports with the presumption that the General Assembly intends to favor the public interest over that of private parties. *See* 1 Pa.C.S. § 1922(5).

Moreover, Section 4902(f) of the Vehicle Code specifies: "All actions taken under authority of this section [(i.e., Section 4902 of the Vehicle Code)] shall be taken in accordance with [DOT's R]egulations."[20] 75 Pa.C.S. § 4902(f). DOT administratively interpreted in Section 189.4(c) of DOT's Regulations[21] that "[i]ssuance of a permit to exceed a posted weight limit or limits will be conditioned on **the agreement** by the permittee **to accept financial responsibility for excess maintenance** of the posted highway or portion thereof to be used by the permittee [(i.e., an excess maintenance agreement)]." 67 Pa. Code § 189.4(c) (bold and underline emphasis added). Reference to *the agreement* in that provision is consistent with Section 4902(c)(1) of the Vehicle Code's reference to "**such agreement** . . . **as they deem necessary to cover the cost of repairs and restoration**" of roadways damaged by overweight vehicles (i.e., an excess maintenance agreement). 75 Pa.C.S. § 4902(c)(1) (bold and underline emphasis added). Because of its attachment within the sentence to the term *permit* ("permit and agreement"), 75 Pa.C.S. § 4902(j), the term *agreement* as first referenced in Section 4902(j) of the Vehicle Code clearly refers to *an excess maintenance agreement* that typically accompanies a permit. *See* 75 Pa.C.S. § 4902(c)(1).

To be internally consistent, because Section 4902(j) of the Vehicle Code expressly limits local authority discretion to deny a permit and excess maintenance agreement to when there are violations of Section 4902 of the Vehicle

---

[20] In fact, to ensure Section 4902 of the Vehicle Code's purposes are met, in Section 4901(d) of the Vehicle Code the General Assembly exposes local authorities that fail to uphold their burden and responsibility to administer, adhere to, or enforce Chapter 49's requirements and/or DOT's Regulations to penalties. *See* 75 Pa.C.S. § 4901(d).

[21] Section 4902(f) of the Vehicle Code specifies: "All actions taken under authority of this section [(i.e., Section 4902 of the Vehicle Code)] shall be taken in accordance with [DOT's R]egulations." 75 Pa.C.S. § 4902(f).

Code and pertinent DOT Regulations restricting overweight vehicles, the General Assembly must have intended that the *agreement* reference in that latter portion of Section 4902(j) of the Vehicle Code must also relate to Section 4902 of the Vehicle Code.[22] To interpret the latter reference to *agreement* to mean *any* agreement between the local authority and the overweight vehicle owner, including those not related to road repairs necessitated by the use of those vehicles, would be inconsistent with Section 4902 of the Vehicle Code's language and purpose. Accordingly, based on this Court's review, the term *agreement* used in the latter part of Section 4902(j) of the Vehicle Code refers to *an agreement "to cover the cost of repairs and restoration" of roadways damaged by their overweight vehicles*, not just *any* agreement. 75 Pa.C.S. § 4902(c)(1) (emphasis added). Importantly, however, the Settlement Agreement in the instant matter was clearly an "agreement . . . to cover the cost of repairs and restoration" of the Road damaged by Appellees' overweight vehicles, a breach of which was a reasonable basis for the Township to refuse to execute a later Excess Maintenance Agreement. 75 Pa.C.S. § 4902(c)(1).

Because the General Assembly authorized the Township in Section 4902(j) of the Vehicle Code to exercise its discretion to deny an excess maintenance agreement to a party that has violated such an agreement, *see* 75 Pa.C.S. § 4902(j), the record supports that Appellees breached the Settlement Agreement, and in the absence of evidence that the Township abused its discretion, the trial court erred by ordering the Township to enter into the Excess Maintenance Agreement with Appellees.

---

[22] The Township asserts that the modifier *pertinent* in the clause "pertinent [R]egulation or agreement," 75 Pa.C.S. § 4902(j), modifies both *Regulation* and *agreement*. Merriam-Webster.com defines *pertinent* as "having a clear decisive relevance to the matter in hand[.]" www.merriam-webster.com/dictionary/pertinent (last visited Oct. 30, 2024). However, its placement and the connector *or* lead this Court to conclude that *pertinent* refers only to *Regulation* in this context.

Based on the foregoing, the trial court's February 22, 2023 order is reversed.

_____
ANNE E. COVEY, Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Perry Township,             :
           Appellant         :
                                :
          v.                    :
                                :
David D. Osikowicz, an individual    :
t/d/b/a Valier Coal Yard; and Original   :
Fuels, Inc., a corporation and t/d/b/a   :    No. 355 C.D. 2023
Grange Lime & Stone           :

## O R D E R

AND NOW, this 31st day of October, 2024, the Jefferson County Common Pleas Court's February 22, 2023 order is reversed.

_____
ANNE E. COVEY, Judge